WENCKER, Appellant, v. MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY.

Division Two, October 27, 1902.

1. Negligence: DEFINITION. Cooley's definition of negligence is quoted in the opinion in this case as follows: "Negligence is the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance · which the circumstances justly demand, whereby such other person suffers injury."

2. ———: INJURY TO LICENSEE BY TRAIN "RUNNING OUT OF SLACK:" PROXIMATE CAUSE. For a number of years plaintiff had furnished lunch to trainmen of defendant's trains, and had sent them to them on the arrival of the trains by her little boys. These had often been instructed by the conductor of the train which killed plaintiff's son, aged eleven years, to put the lunches in the caboose and take away the empty baskets. To do this it was necessary, and they had long been accustomed, to get aboard the train for that purpose. On the day of the accident a freight train drew up to the platform, and as the front end of the caboose, which also carried passengers, stopped three or four steps from the boy, the · conductor stepped off, and without warning to any one walked along the platform. Immediately thereafter the boy, being wholly unwarned of any danger and holding a basket of lunch and a jug of coffee, stepped upon the steps of the caboose's front platform, and · a sudden movement of the car backward threw him under the next car, which inflicted injuries from which he died. This sudden movement of the train was caused by "the running out of the slack," a movement of constant occurrence of freight trains, and one which the conductor and the other trainmen well knew would occur. Held, that defendant, by the negligence of its servants, did not proximately cause the death of the boy, who was a mere licensee on the train, and, hence, his mother could not recover damages for his death.

3. ———: LICENSEE. One who enters into a caboose, which carries passengers, for the purpose of bearing a lunch to the trainmen, with no intention of becoming a passenger, there being no contract expressed or implied to that effect, and no recognition of him as such, but under a general arrangement between his mother and the conductors to supply them with lunches, with which the company had nothing to do, and under a general direction from the conductor' of the particular train to take the lunch into the caboose, is a mere licensee, to whom the railroad company owes no other duty than not to negligently or' wantonly injure him, since his business was with the trainmen, and not with the company.

4. ———: NECESSARY SHOWING. In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled.

Appeal from Warren Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*W. C. & J. C. Jones, J. W. Delventhal* and *A. H. Roudebush* for appellant.

(1) The demurrer to the evidence should have been overruled. (a) Though the facts are undisputed, if different men might honestly draw' different conclusions from them. the case should be left to the jury. Thompson on Trials, sec. 1663; Railroad v. Stout, 17 Wall. 663; Brink v. Railroad, 17 Mo. App. 194; Tully v. Railroad, 47 Atl. 1019; Heppel v. Railroad, 51 N. W. 1049; Wyatt v. Railroad, 55 Mo.' 485; Norton v. Ittner, 56 Mo. 351; Stoddard v. Railroad, 65 Mo. 514; Railroad v. Van Stenburg, 17 Mich. 99; Wilkins v. Railroad, 101 Mo. 93; Callahan v. Warne, 40 Mo. 137; Roddy v. Railroad, 104 Mo. 234. (b) It is not negligence, per se, to attempt to get on a slowly-moving train, and whether it is or is not negligence, is a question of fact for the jury. Wyatt v. Railroad, 55 Mo. 485; Doss v. Railroad, 59 Mo.

Vol 169 mo—38

27; Nelson v. Railroad, 68 Mo. 593; Kelly v. Railroad, 70 Mo. 604; Straus v. Railroad, 75 Mo. 185; Swigert v. Railroad, 75 Mo. 475; Clotworthy v. Railroad, 80 Mo. 221; Leslie v. Railroad, 88 Mo. 51; Weber v. Railroad, 100 Mo. 194; Tulks v. Railroad, 111 Mo. 340.    (c) If the boy used that care which may be reasonably expected from one of his age and capacity, then he was not guilty of contributory negligence; and the question whether he did or did not use that care, was a question of fact which should have been left to the jury.    Lynch v. Nurdin, Ad. & El. 1 Q. B. 30; Beach on Contrib. Neg., sec. 117; Boland v. Railroad, 36 Mo. 484; O'Flaherty v. Railroad, 45 Mo. 73; Koons v. Railroad, 65 Mo. 592; Donoho v. Vulcan Iron Works, 75 Mo. 404; McCarthy v. Railroad, 92 Mo. 541; Williams v. Railroad, 96 Mo. 275; Eswin v. Railroad, 96 Mo. 290; Spillane v. Railroad, 111 Mo. 555; Berger v. Railroad, 112 Mo. 238; Schmitz v. Railroad, 119 Mo. 276; Payne v. Railroad, 129 Mo. 416; Sly v. Railroad, 134 Mo. 681; Graney v. Railroad, 140 Mo. 89.    (d) If there is any evidence, however slight it may be, and whether direct or inferential, the case must go to the jury. Speed v. Herrin, 4 Mo. 356; Emerson v. Sturgeon, 18 Mo. 170; McKown v. Craig, 39 Mo. 156; Singleton v. Railroad, 41 Mo. 465; Routsong v. Railroad, 45 Mo. 236; McFarland v. Bellows, 49 Mo. 311; Gannon v. Gas Company, 145 Mo. 502.    (2) It was the duty of the train employees to warn persons in or about the train of the danger likely to result from the "running out of the slack."    Though the boy was guilty of negligence, yet if the conductor saw, or by the exercise of ordinary care might have seen, him in or approaching a position of danger in time to warn him or avoid the injury, and failed to give such warning, the defendant is liable.    Isabel v. Railroad, 60 Mo. 475; Williams v. Railroad, 96 Mo. 280; Shaw v. Railroad, 104 Mo. 548; Hanlon v. Railroad, 104 Mo. 381; Fiedler v. Railroad, 107 Mo. 645; Rosenkranz v. Railroad, 108 Mo. 9; Dahlstrom v. Railroad,

108 Mo. 525; Dixon v. Railroad, 109 Mo. 429; Humbird v. Railroad, 110 Mo. 76, 81; Beardon v. Railroad, 114 Mo. 384; Sullivan v. Railroad, 117 Mo. 214; Hicks v. Railroad, 124 Mo. 115; Moore v. Railroad, 126 Mo. 265; Bunyon v. Railroad, 127 Mo. 13; Sinclair v. Railroad, 133 Mo. 233; Ennis v. Railroad, 155 Mo. 20. (3) The boy was entitled to the same protection as if he were a passenger. Shearman & Redfield on Neg., sec. 490; Ray on Negligence, p. 6; Hutchinson on Carriers, secs. 556, 562; Sherman v. Railroad, 72 Mo. 63; Muelhansen v. Railroad, 91 Mo. 332; Wagner v. Railroad, 91 Mo. 512; Whitehead v. Railroad, 99 Mo. 263; Murphy v. Railroad, 43 Mo. App. 346; Buck v. Railroad, 46 Mo. App. 563; Wilton v. Railroad, 107 Mass. 108; Cleveland v. Steamboat Co., 68 N. Y. 306; Gordon v. Railroad, 40 Barb. 546; Jacobus v. Railroad, 20 Minn. 134; Smith v. Railroad, 32 Minn. 1; Allendar v. Railroad, 37 Iowa 264; Brien v. Bennett, 8 Car. & P. 724. (4) The permission of the mother was not the proximate cause of an injury that could not have happened except for the gross carelessness of the defendant's servant. Buck v. Railroad, 46 Mo. App. 565; Railroad v. Ogier, 11 Casey 72; Drew v. Railroad, 26 N. Y. 49; Crossgrove v. Ogden, 49 N. Y. 255; Railroad v. Lewis, 29 P. F. Smith 33.

*Geo. P. B. Jackson* for respondent.

(1) The evidence did not establish any negligence on the part of defendant or any of its servants. (a) There was no pretense of careless handling of the train. (b) The plaintiff's son was not acting under any instruction or invitation given by authority of defendant; at best he was no more than a licensee of Stone—who was the conductor, but was not acting as such in having the lunch placed in the caboose. Defendant is not liable for the acts of Stone unless they were within the scope of his employment, and done in furtherance of

defendant' business. Reilly v. Railroad, 94 Mo. 600; Garretzen v. Duenckel, 50 Mo. 104; Ridge v. Transfer Co., 56 Mo. App. 133; Meade v. Railroad, 68 Mo. App. 92; Cousins v. Railroad, 66 Mo. 572; Snyder v. Railroad, 60 Mo. 443; Walker v. Railroad, 121 Mo. 575; Snider v. Crawford, 47 Mo. App. 8; Hartman v. Muehlebach, 64 Mo. App. 565; Farber v. Railroad, 116 Mo. 81; Woolwine v. Railroad, 36 W. Va. 329; 1 Fetter's Carriers of Passengers, sec. 239; 1 Elliott on Railroads, secs. 214 and 215; 3 Ibid, sec. 1256, at p. 1966, and sec. 1250 at p. 1954, and sec. 1251; Gurley v. Railroad, 104 Mo. 226. (c) Defendant was under no duty to discover plaintiff's son either on the caboose steps or in the act of getting on, nor to warn him not to get on. The most that could be exacted of defendant is that, after the men in charge of the train discovered the boy in a place of danger, they should not willfully injure him or knowingly permit him to be injured by any means that could be prevented. Authorities cited above. (2) The plaintiff's son was of sufficient capacity to be responsible for his own conduct, and was therefore guilty of such negligence contributing to his death as precludes a recovery by his mother. Ridenour v. Railroad, 102 Mo. 270; Lynch v. Railroad, 112 Mo. 437; Spillane v. Railroad, 135 Mo. 414; Payne v. Railroad, 136 Mo. 562; Schmitt v. Railroad, 160 Mo. 43. (3) The plaintiff herself was guilty of negligence in sending her son to the place where he met his death, regardless of the capacity of the boy, while the more incapable he was of taking care of himself, the greater was her want of care in sending him. Stillson v. Railroad, 67 Mo. 674; Koons v. Railroad, 65 Mo. 592; Winters v. Railroad, 99 Mo. 509; Senn v. Railroad, 124 Mo. 628.

BURGESS, J.—This is an action by plaintiff, the mother of Roy Wencker, deceased, a minor, to recover from defendant the statutory penalty of $5,000 for his death,

which she alleges was occasioned by the negligence of defendant in the management of its train which ran upon and killed him.

The accident happened at the village of Augusta, St. Charles county, Missouri, where the track of defendant's railroad runs east and west. The depot is on the north side of the track. During the five years immediately preceding the day in question, the plaintiff had furnished daily lunches to trainmen of the Missouri, Kansas & Texas railway. During the last two years of this time these lunches in baskets had been carried to the train, sometimes by one, sometimes by the other of two sons of the plaintiff, Fritz and Roy, aged respectively fourteen and eleven years. Roy was in the habit of carrying them in summer, and had been doing so daily for six weeks next preceding the day in question. Both boys had been often directed by Conductor Stone, mentioned below, and by other conductors, to put the lunches in the caboose, and take away the empty baskets. It was necessary, and they had long been accustomed, to get aboard trains for that purpose. On October 4, 1897, about two o'clock in the afternoon, Roy Wencker was standing on the depot platform near the east end, holding a basket of lunch and a jug of coffee prepared for the trainmen on the west-bound local freight. That train, consisting of freight cars, with a caboose on the rear end for the accommodation of passengers and trainmen, drew up to the depot and ran along till the front end of the caboose passed within three steps of Roy and stopped three or four steps west of him. When the train stopped, Conductor Stone stepped off the front platform of the caboose and, without warning to any one on or about the platform, walked westwardly on the platform. Immediately thereafter, Roy, being wholly unwarned of any danger stepped upon the platform or steps of the caboose with the basket and jug in his hands. A sudden movement of the car backward threw him under the car immediately in front of the caboose,

by which he received injuries from which he died. The sudden movement of the train was caused by the "running out of the slack" of the train, a movement of constant occurrence in freight trains, and a movement which the train employees, and particularly Conductor Stone, well knew would occur within a very few moments after the engine came to a stand-still.

This constituted the plaintiff's evidence in chief, and on its submission the defendant prayed the court to give the following instruction in the nature of a demurrer to the evidence:

"The court declares the law to be, that upon the pleadings and evidence in this case the plaintiff is not entitled to recover, and the finding must be for the defendant."

This instruction was given by the court and the plaintiff duly saved her exception thereto, whereupon plaintiff took an involuntary nonsuit, with leave to move to set the same aside. Her motion for a new trial and to set aside the nonsuit having been overruled, and judgment of nonsuit entered against her, plaintiff took an appeal to this court.

The first question to be disposed of, and the one which goes to the very foundation of this litigation, is as to whether or not defendant by the negligence of its servants proximately caused the death of Roy Wencker, for if not, plaintiff was not entitled to recover, whatever the circumstances, which led up to his death, may have been.

There are many definitions of negligence, but generally of the same purport. Judge COOLEY defines it as "the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." [Cooley on Torts (2 Ed.), p. 572.]

In the case of Heaven v. Pender, Law Reports, 11 Q. B. D. l. c. 507, it was said: "Actionable negligence consists in the neglect of the use of ordinary care or skill toward a

person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect the plaintiff, without contributory negligence on his part, has suffered injury to his person or property."

The question for solution is what duty defendant owed to deceased if any.

It is not claimed that there was any mismanagement of the train, nor was there, the sudden movement of it which caused the accident being the result of the "running out of the slack" which necessarily occurs in freight trains when brought to a stop by manipulation of the engine and brakes. Nor is there any pretense that the "running out of the slack" was unusual or extraordinary, but it seems to occur in almost every instance when a freight train is stopped by those in charge of it. The question then recurs, what duty defendant owed the deceased to notify him what danger might be apprehended by him from the running out of the slack.

As he did not enter upon the car with the intention of becoming a passenger, and there was no contract either express or implied to that effect, nor recognition of him by the conductor in charge of the train as such, he was not a passenger and defendant owed him no duty as such, but he was at most a mere licensee to whom the defendant owed no duty other than not to negligently or wantonly injure him.

He had for the six weeks next preceding the time of the accident carried lunches to the conductors and placed them in the cabooses attached to the trains respectively of which they had control, under the continuation of an arrangement between the father of deceased and said conductors made during the father's lifetime, to which defendant was not a party nor in any way interested or concerned.

In Sweeny v. Railroad, 10 Allen 372, it was said: "In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plain-

tiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault, or negligence, or breach of duty, where there is no act or service, or contract, which a party is bound to perform or fulfill. All the cases in the books, in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. Thus, a trespasser who comes on the land of another without right can not maintain an action if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." Further on it is added: "A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident."

The deceased's business being with the conductor and not with the defendant, in our opinion, the facts fail to show that

defendant owed him any other duty than as before indicated, and was under no obligation to notify him as he approached the car of the danger to be apprehended by him "by the running out of the slack" in the train, but that if any such duty was imposed by law upon any one it was upon Conductor Stone, for whose benefit, and with whose knowledge he was on his way to the car with the lunch when he met him on the platform at the depot. This being the case, the fact that deceased was only about eleven years of age at the time of his unfortunate death, is of no significance.

From these intimations we are of the opinion that plaintiff was not entitled to recover, and that no error was committed in sustaining the demurrer to the evidence. The judgment is affirmed.

All of this Division concur.