## CARR, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY.

### Division Two, March 29, 1906.

1. **NEGLIGENCE: Licensee on Track: Liability..** A railroad company owes no other or greater duty to a naked licensee, exercising the privileges of such in walking on a pathway along the side of the track, than not to negligently or wantonly injure him.

2. ——: ——: ——: **Facts in Judgment.** Plaintiff, as a matter of convenience to himself, in going to church, chose, instead of a roadway that paralleled defendant's railroad tracks, a pathway that ran at the ends of the ties, which had quite generally been used by people in the vicinity for that purpose, and while walking along this pathway, a brakeshoe flew out from a rapidly running train on a second track seventeen feet distant, and struck plaintiff and injured him. There was no evidence tending to show that the railroad company was guilty of any negligence contributing to plaintiff's injury. *Held*, that he cannot recover.

3. **ERRONEOUS INSTRUCTIONS: Immateriality.** Where the verdict was for defendant, it makes no difference whether the instructions given, or asked and refused, or asked, modified and given, were right or wrong, if plaintiff was not, from any point of view, entitled to recover. In such case a demurrer to plaintiff's case should have been sustained.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

AFFIRMED.

*P. Wm. Provenchere* for appellant.

(1) If the tracks or roadbed of a railroad company are used, and have for a long time been used, by the public as a footway, with the knowledge of, and without objection from, the company, one in so using such roadbed would not be a trespasser. Le May v.

Railroad, 105 Mo. 370; Lynch v. Railroad, 111 Mo. 609; Morgan v. Railroad, 159 Mo. 279. The statute (sec. 1105) implies that one may walk on the tracks of a railroad on "a publicly-traveled road." (2) The company owes it as a duty even to trespassers to take precaution or care not to injure them if there is reason to anticipate their presence. Brown v. Railroad, 50 Mo. 461; Williams v. Railroad, 96 Mo. 281; Fiedler v. Railroad, 107 Mo. 651; 21 Am. and Eng. Ency. Law (2 Ed.), 470; Railroad v. Stout, 17 Wall. 659. (3) A railroad company owes a duty not only to passengers, but to the public, a duty of a public character, to conduct its business in a manner safe to the public, and certainly to all who may be rightfully on its route. Brown v. Railroad, 50 Mo. 467; Lewis v. Railroad, 59 Mo. 504; Hicks v. Railroad, 64 Mo. 439. From the above it follows: If the tracks or roadbed of a railroad company are used, and have for a long time been used, by the public, as a footway, with the knowledge and tacit consent of the company, and one while so using such roadbed is injured through the company's negligence in having and using on a passing train, in the operation thereof, an appliance that it knew, or by ordinary care would have known, was defective, and liable to fly off and injure persons along the route of the train, the company is liable. (4) In order that a party may be liable for negligence, it is not necessary that he should have contemplated, or been able to anticipate the particular consequences which ensued, or the precise injuries sustained by plaintiff. It is sufficient if, by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected. That the occurrence causing the injury is unusual or usually harmless is immaterial. 21 Am. and Eng. Ency. Law (2 Ed.), 487; Miller v. St. Louis, 90 Mo. 394; Graney v. Railroad, 140 Mo. 98; Hoepper v. Southern Hotel, 142 Mo. 388.

*Martin L. Clardy* and *Henry G. Herbel* for respondent.

Inasmuch as plaintiff was on our right of way solely for his own convenience, and not for any purpose from which any benefit could possibly flow to us, we were under no duty whatever to protect him from casualties, such as he encountered on this occasion, but in using our right of way for his own convenience and for a purpose wholly disconneceted with any business of the railroad company, he took the license with its concomitant perils. Wencker v. Railroad, 169 Mo. 599; Moore v. Railroad, 84 Mo. 487; Morgan v. Railroad, 7 Fed. 79; Railroad v. Monday, 31 Am. and Eng. R. R. Cas. 425; Cusiek v. Adams, 115 N. Y. 55; De La Pena v. Railroad, 74 S. W. 58; Schreiner v. Railroad, 90 N. W. 400; Redigan v. Railroad, 28 N. E. 1134; Farqua v. Railroad, 28 So. 850; Hughes v. Railroad, 66 Mo. 325; Turner v. Thomas, 71 Mo. 596; Henry v. Railroad, 76 Mo. 295. There was an absolute dearth of evidence to fasten any liability on defendant for this man's misfortune. Our evidence showed that this train had been carefully inspected at at least two points before it reached the scene of the accident, and that when it got into the union depot it was found that all the brakeshoes were intact. Plaintiff was using our right of way for his sole convenience and not for any business connected with the railway company, and, therefore, the company owed him no duty to protect him against injuries of this character. But, even if there had been a duty resting on it to protect him, the accident was one of such unusual occurrence that no human foresight could have anticipated that it would occur, and hence defendant ought not to be liable for not forecasting it.

BURGESS, P. J.—This is an action for damages in the sum of ten thousand dollars for personal injuries

alleged to have been sustained by plaintiff by reason of the negligence of defendant. The petition alleges that the public and plaintiff were for a long time accustomed to use as a footway, with the knowledge and consent of defendant, a certain part of its roadbed in the city of Webster Groves, in St. Louis county; that plaintiff, while walking upon that part of defendant's right of way or roadbed, was struck by a piece of brake-shoe flying from a car of a passing train of defendant; that the said brake-shoe was part of an appliance used for operating the train, and was in a defective and dangerous condition, liable to break in the operation of the train, and a part thereof to fly off and injure persons along the road; all of which defendant knew, or by ordinary care might have known; that defendant negligently permitted the brake-shoe to be on the train in such defective and dangerous condition, and the brake-shoe, being in a defective and dangerous condition, broke, and a part of it flew from the train and struck and injured plaintiff.

The defenses were a general denial and plea of contributory negligence. Plaintiff replied, denying all new matter set up in the answer.

The facts are substantially as follows:

Plaintiff resides in St. Louis county, just outside the limits of Webster Groves, near the roadway of defendant. Tuxedo station, near which the accident is alleged to have occurred, is on the outskirts of the town.

On Sunday morning, April 20, 1902, plaintiff started to church, and while on the way walked along the north side of the northernmost of defendant's two tracks, running in an easterly and westerly direction at that point. The track next to the path on which he was walking was what was known as the "west-bound track," and the track south of it, which was the one on which the train was moving at the time of the accident, was known as the "east-bound track." Plaintiff was walking sixteen or seventeen feet north of the train

from which he claims the brake-shoe flew and struck him. He testified that the train was the "fast mail," and his witness, Murphy, who was walking a short distance behind him at the time he was struck, also testified that it was the "fast mail," and gave its number as No. 10. This was the regular fast mail train which was due at Lake Junction, a short distance west of Tuxedo, at 6:58 a. m. There was another train, No. 8, which arrived at Lake Junction at 6:45 a. m., or thirteen minutes before the fast mail was due there.

Plaintiff was accompained by a young lady, who was walking immediately behind him. When Carr got within about two hundred feet of Tuxedo station this fast mail train, No. 10, passed him on the east-bound track, there being the west-bound track between him and the passing train, or a space of at least seventeen feet. As he saw it approaching he stopped and looked at the train while it was passing, and was struck by some dark object which flew from the train, but which he could not distinguish. The lady who was walking immediately behind him, seeing him reel and about to fall, caught him and helped him to his home. She testified that she picked up a part of a brake-shoe at the place where he was struck at the time, but after carrying it a short distance dropped it and assisted Mr. Carr home. Murphy, his other witness, who was a section hand in defendant's employ, happened to be walking west several hundred feet behind Carr and the lady, saw the fast mail, No. 10, approaching, and as it was going by Carr, saw him reel, and the lady take hold of him to hold him up. He went to them and assisted Carr, who was a next door neighbor of his, to his home. He then, within twenty minutes thereafter, went back to the scene of the accident and found a piece of a brake-shoe about at the place where he saw Carr stagger and threw it down the embankment. Mrs. Carr, his sister-in-law, who was with Carr at the time of the accident, went back to the scene of the accident about an

hour and a half thereafter, and states that she found this brake-shoe at about the place where she had dropped it, although Murphy testified that he had thrown it down the embankment.

The tracks of the defendant are laid on a high embankment along there, and there is a road known as Marshall avenue, which runs parallel with the railroad tracks a short distance west of plaintiff's home, and south of defendant's right of way there was a public road running to Tuxedo station, which Carr could have used if he had wished to avoid the railroad tracks. Instead of doing that he walked along the north side of the west-bound track, towards Tuxedo and the church he was going to attend, as it was a more direct route and the walking better. His only object in using defendant's right of way was his own convenience. It was shown by quite a number of witnesses who testified for plaintiff, that people in that vicinity used the defendant's right of way and tracks for that purpose quite generally.

The defendant proved, and its proof was not controverted by the plaintiff, that it inspected this train at Sedalia and Pacific, Missouri, before it reached St. Louis; that it was in good condition, and no brake-shoes were missing; that immediately upon its arrival in St. Louis that morning it was thoroughly inspected and no brake-shoes were found missing therefrom; that shortly after this regular inspection was made at St. Louis, a message was received by the superintendent's office, which was near the place where the train was standing, to the effect that it was claimed that a man had been struck by a brake-shoe which came from that train, near Tuxedo, that morning, and that it was thereupon again inspected by three or four inspectors, all of whom testified that after a thorough inspection thereof, they found there was no brake-shoe missing therefrom.

At the conclusion of the evidence the plaintiff asked the court to instruct the jury as follows:

"1. If the jury believe from the evidence that on April 20, 1902, the plaintiff, while walking on the right of way and roadbed of defendant in the city of Webster Groves, in St. Louis county, Missouri, was struck and sustained injury by a piece of an iron brake-shoe which was flung against him with force from a car of the moving passenger train, by reason of the movement of the train, which train was then and there one of the regular trains of the defendant engaged in carrying passengers and that the said brake-shoe was an appliance of said train and was then and there made use of and employed by defendant in operating said train, and if the jury find from the evidence that said brake-shoe was in a defective and dangerous condition and was liable to break and to be in whole or in part flung off while being used as aforesaid and was liable to inflict injury on persons along the road with whom it came in contact, and if the jury find from the evidence that all of said matters were known to the defendant at and before said time or [might] would have been known to it by *ordinary care on its part in time to have remedied such defective and dangerous condition before said time in the exercise of ordinary* care on its part, and if the jury further find from the evidence that plaintiff did not in any manner contribute to bring about the contact between himself and said piece of said iron brake-shoe, then the jury will return a verdict for the plaintiff, provided they further find from the evidence that the place where plaintiff was injured was not fenced and had for years with the [tacit] knowledge and consent of defendant been habitually used by the public as a public footway and footpath. Ordinary care as used in this instruction is such as a person of ordinary prudence and caution, according to the usual and general experience of mankind, would exercise in the same situation and circumstances as those of the defendant whose conduct in that regard is in question in this case."

Which instruction as offered the court refused to

give. And the court of its own motion changed said instruction by striking out the words between brackets and inserting the words in italics, and said instruction, as so changed, the court gave. And to each and all of which rulings and actions of the court in refusing said instruction as offered, and in so changing said instruction, and giving the same so changed, the plaintiff duly excepted at the time.

"2. The court instructs the jury that the answer of defendant sets up contributory negligence on the part of plaintiff as a defense to this action, and is in the nature of a plea of confession and avoidance and impliedly admits some negligence on the part of defendant in the transaction involved in this case, and the jury are authorized so to find."

Which instruction the court refused, and to the action and ruling of the court in refusing to give said instruction plaintiff duly excepted at the time.

"3. If the jury find for the plaintiff they will assess his damages at such sum as under the evidence they believe will compensate him for the pain and suffering endured, if any, by reason of the matters aforesaid, for the expense, if any, incurred by him thereby, for the loss of time, if any, resulting to him therefrom and for the impaired power, if any, of plaintiff to earn a livelihood by reason thereof, not exceeding, however, the sum of ten thousand dollars."

Which instruction as offered the court modified of its own motion, by striking out the words "not exceeding, however, the sum of ten thousand dollars," and said instruction so modified the court gave.

Over the objection and exception of plaintiff the court also gave the following instructions:

"1. The court instructs the jury, that if you believe from the evidence that the plaintiff's injuries were the result of mere accident, and not of negligence on the part of the defendant, your verdict will be for the defendant.

"2. The court instructs the jury that defendant was not required to anticipate or guard against unusual or extraordinary occurrences resulting from the operation of its trains, and unless you believe from the evidence that plaintiff's injury resulted from a cause which men of ordinary prudence, engaged in the operation of railroads, would have naturally and reasonably anticipated, under the circumstances in evidence, your verdict will be for the defendant.

"3. The court instructs the jury, that unless you believe from the evidence that the piece of brake-shoe, by which plaintiff claims to have been struck, was a part of the train that was passing plaintiff at the time he was struck by said shoe, your verdict will be for the defendant."

Under the facts disclosed by the record, it may be conceded, which is not, in fact, controverted by the defendant, that it is no defense to this action that plaintiff, at the time of his injury, was walking along on the roadbed of defendant. That plaintiff was tacitly a licensee, and exercising the privileges of such in using defendant's right of way and track as a footway, is, we think, shown by the evidence, and this being the case, the question arises as to what duty defendant owed plaintiff as such licensee. Plaintiff contends that the defendant company owed a duty to the public to conduct its business in a manner safe to the public and to all persons traveling upon foot at the place where the injury occurred, because the tracks and right of way at that place had been used as footways by the public with the knowledge and tacit consent of the defendant, and that if plaintiff, while so using such tracks or right of way, was injured through the defendant company's negligence in having and using on a passing train, and in the operation thereof, an appliance that it knew, or by the exercise of ordinary care might have known, was defective and liable to fly off and injure persons along the route of the train, the company is liable.

In Brown v. Railroad, 50 Mo. 461, the plaintiff was injured by one of defendant's trains while she was attempting to cross defendant's track and right of way under the following circumstances: The plaintiff, Mrs. Brown, was in Cameron, and wanted to cross a street over which the defendant's track was laid; but she discovered that the crossing was obstructed by a train of cars standing upon the track, so that she could not pass at that place. She then turned and crossed the track at a place where there was no public crossing, but there was a path across the track at that point which was occasionally used by the people, although it did not appear that the company had ever authorized anybody to cross at that place. When plaintiff went on the track there was an engine and tender standing thereon about six feet distant, and while she was in the act of crossing, the engine moved and the tender struck her, the wheels passing over and crushing one of her legs. She testified that no signal was given of the moving train, and she did not notice the train, until struck by the tender. The evidence with regard to the ringing of the bell before the engine started was conflicting. The court held that though a person be injured while unlawfully on a railroad track, or contributes to his injury by his own carelessness and negligence, yet, if the injury might have been avoided by the use of ordinary care and caution by the railroad company, it is liable for damages for the injury. But in that case the injury occurred at a crossing in a town, and might have been avoided by the exercise of ordinary care on the part of the defendant's servants in the movement and operation of the engine and train, and has no bearing on this case, so far as the cause of the alleged injury is concerned.

Lewis v. Railroad, 59 Mo. 495, was an action for damages for personal injuries sustained by a brakeman

on defendant's road, and caused by a defect in defendant's track. It was held by the court that it is the duty of railroad companies to keep their road and works and all portions of the track in such repair, and so watched and tended, as to insure the safety of all who may be lawfully upon them, whether passengers or servants or others, and that if they fail to do so, they are guilty of a breach of duty, and liable for the consequences. That case, like the former, differs very materially from the case at bar, and is not in point.

Another case relied upon by plaintiff is that of Hicks v. Railroad, 64 Mo. 430. In that case it was held that even supposing the child injured was a trespasser, the liability of the railroad company to him for injuries would not be restricted to those which were wanton, but would embrace all such as resulted from the want of ordinary care, and that the care and caution required of railroad companies in running their trains are commensurate with the danger to persons and property incident to that mode of conveyance. The plaintiff in that case was standing on the platform adjoining the railroad track at Lee's Summit, when a freight train came in on the main track, and a piece of timber with which one of the cars was loaded, and which projected from twenty inches to two feet over the side of the car, struck and injured plaintiff. There is no analogy between that case and the case at bar. It is common knowledge that a timber or other hard substance projecting some two feet from the side of a moving railroad car endangers the safety of persons who might be standing near the track. In this case the situation is wholly different. The plaintiff was on the defendant's right of way enjoying the privilege merely of a licensee in walking thereon, and the company owed him no other or greater duty than not to negligently or wantonly injure him. The evidence in no way shows that the injury was the result of negligence on the part of the company.

It makes no difference whether the instructions

were right or wrong, if the plaintiff was not, from any point of view, entitled to recover. As was said by MARSHALL, J., in speaking for the court in Moore v. Railroad, 176 Mo. l. c. 545: "If there is no evidence of a willful, reckless or wanton disregard of human life, on the part of the operatives of the train, there is nothing for a jury to pass upon, and the court should sustain a demurrer to the evidence. If, instead of so doing, the trial court submits the case to the jury and gives improper and erroneous instructions, and the jury find for the defendant, the verdict will not be disturbed, notwithstanding such misdirection, because it is in consonance with the true law, and is for the right party, and because the plaintiff would not be entitled to a verdict at all upon such a showing." [Citing Hill v. Wilkins, 4 Mo. l. c. 88; Orth v. Dorschlein, 32 Mo. 366; Kelly v. Railroad, 88 Mo. 534; Ellerbe v. Bank, 109 Mo. 445; Homuth v. Railroad, 129 Mo. l. c. 642; Haven v. Railroad, 155 Mo. l. c. 223-224.]

The courts make a distinction between a person who comes upon a railroad's premises at the invitation of the railroad company, or for some purpose connected with its business, and a person who goes upon such premises for his own convenience or pleasure. In the one case there is a duty to protect the person thus going upon the property of another from injury, while on his premises, while as to the other, there is no such duty. This distinction is nowhere more clearly stated than in the case of Sweeny v. Railroad, 10 Allen l. c. 372, in the language following:

"In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault, or negligence, or breach of duty, where there is no act,

195 Sup.—15

or service, or contract, which a party is bound to perform or fulfill. All the cases in the books, in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered, or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. Thus, a trespasser who comes on the land of another without right cannot maintain an action, if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." Further on it is added: "A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident."

So in Moore v. Railroad, 84 Mo. 1. c. 487, it is said:

"These facts would seem to bring this case within the rule founded in justice and necessity, and illustrated in many adjudged cases, that where one is not a mere licensee, but engaged with the consent of the rail-

way company in a transaction of common interest to both, and is injured by a failure of the company to maintain its grounds and crossings and depot, in a reasonably safe condition, the railway would be liable. [Holmes v. Railroad, 4 Ex. L. R. 254; 1 Thompson on Negligence, 313; Bennett v. Railroad, 102 U. S. 577.] On the other hand, no duty is imposed by law upon the owner to keep his premises in a condition to prevent injury to those who come there solely for their own convenience or pleasure, or those who are not either expressly invited to enter, or induced to come upon them by the purposes for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter. [Straub v. Soderer, 53 Mo. 38.] In other words, a mere passive acquiescence by an owner or occupier in a certain use of his lands by others involves no liability, but if he directly or by implication induces persons to enter on and.pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to one injured thereby.''

The same rule is announced in Morgan v. Railroad, 7 Fed. l. c. 79, wherein it is said:

''The court ruled that, inasmuch as nothing more than a mere license or permission to the plaintiff to cross where he did was shown, the defendant owed the plaintiff no duty and could not be liable for negligence. It was conceded on the argument that this ruling was correct, if the plaintiff was crossing the defendant's premises by a license merely, and not by invitation. Indeed, the doctrine that a naked license or permission to enter or pass over premises will not create a duty or impose an obligation on the part of the owner towards the licensee to provide against danger or accident, is so elementary that it cannot be questioned.''

The case of Sweeny v. Railroad, supra, was followed by this court in Wencker v. Railroad, 169 Mo. 592; also in Woolwine's Admr. v. Railroad, 15 S. E. 81; Ladd v. Railroad, 119 Mass. 412; Severy v. Nickerson, 120 Mass. 307; Davis v. Central Congregational Society, 129 Mass. 371. In Cusick v. Adams, 115 N. Y. 55, the same principle is announced and stated to be of universal application.

There was no evidence whatever tending to show any negligence on the part of defendant tending to contribute to plaintiff's injury. It was clearly an accident, a circumstance, which could not, in the very nature of things, have been anticipated by defendant, and it should not be held to respond in damages therefor. The verdict of the jury was in consonance with the evidence and the justice and law of the case. The judgment is affirmed.

All concur.