J. HENRY BECKMAN AND EDITH B. BECKMAN, APPELLANTS, v. JAMES A. KINDER, RESPONDENT.—165 S. W. (2d) 311.

St. Louis Court of Appeals. Opinion filed November 4, 1942.

Appellant's Motion for Rehearing Overruled November 17, 1942.

Petition for Writ of Certiorari Denied by the Supreme Court January 29, 1943.

*J. Grant Frye* and *Gerald B. Rowan* for appellants.

*W. Osler Statler* for respondent.

McCULLEN, J.—Appellants, husband and wife, brought this suit as plaintiffs to recover from respondent, as defendant, the sum of $87.60 as damages for the alleged negligence of defendant, while he was Collector of the Revenue of Cape Girardeau County, Missouri, in failing to present for payment in due time a check delivered to him by plaintiffs in payment of their state and county taxes on personal property and on certain real estate owned by plaintiffs in the City of Cape Girardeau. The suit was originally instituted in the Circuit Court of Cape Girardeau County but was taken on a change of venue to the Cape Girardeau Court of Common Pleas.

At the trial, at the close of plaintiffs' evidence, the court directed a verdict in favor of defendant "for the sole reason that the testimony was that there is a possibility of paying this claim in full by the liquidator on or before the final liquidation of the bank." After an unavailing motion for a new trial, plaintiffs duly appealed.

We think it proper to point out that, although the case involves transactions alleged to have occurred in November, 1932, suit was not filed until October 28, 1937, and the cause was not brought to trial until September 26, 1941, both parties having by agreement continued it from term to term until it finally was tried. The appeal herein was allowed on December 12, 1941, and the bill of exceptions was filed in February, 1942.

There being no question as to the pleadings, it is sufficient to say that the petition of plaintiffs set forth facts which they charged constituted defendant's negligence. Defendant answered with a general denial. The parties filed an agreed statement of facts and presented additional evidence.

From the agreed statement of facts and the evidence, it appears that, about 2 P. M. on Friday, November 4, 1932, plaintiffs delivered their check in the sum of $87.60 to defendant as County Collector of Cape Girardeau County in payment for real estate and personal taxes due from them on property then owned by them in Cape Girardeau City. The check was drawn on the Sturdivant Bank, which was located in the City of Cape Girardeau where the check was delivered to defendant. The Sturdivant Bank was doing a regular banking business in the City of Cape Girardeau on Friday, November 4, 1932, from 9 A. M. to 3 P. M. It was also open for business on Saturday, November 5, 1932, from 9 A. M. to 3 P. M., but, after closing its doors for business at 3 P. M. on that day, it never thereafter reopened for business for the reason that sometime during Sunday November 6, 1932, or in the early morning of Monday following, it was taken

over by the State Finance Department for liquidation and is still in process of liquidation.

It further appears that, after the closing of the Sturdivant Bank, defendant, as collector, charged back on the tax records the taxes for which he had on November 4, 1932, given a receipt to plaintiffs; that the records showed that until October 25, 1937, said taxes, both personal and real, were delinquent; that on October 24, 1937, after the then collector of the revenue, W. F. Bergmann, had advertised for sale the tax liens on the real estate, plaintiffs entered into a compromise settlement of the taxes with the county court for the sum of $87.60, which sum plaintiffs paid on October 24, 1937, to the county collector in full settlement of the claim against them for back taxes.

Defendant was the duly elected collector of the county and served, after his election in 1930, a four-year term in said office expiring March 1, 1935. The real estate taxes and the personal property taxes were due and payable in the fall of 1932.

Plaintiffs introduced in evidence the receipt signed by defendant as collector showing personal property and real estate taxes aggregating $87.60 as having been paid by plaintiffs on November 4, 1932. They also introduced in evidence the check used in payment of the taxes. The check was dated November 4, 1932, drawn on the Sturdivant Bank, payable to the order of James A. Kinder in the sum of $87.60, signed by J. H. Beckman, Rent Account. A warranty deed showing their ownership of the real estate involved was also introduced by plaintiffs.

Defendant testified that plaintiff Mrs. Beckman gave him the check in payment of the taxes; that he did not take it to the Sturdivant Bank but put it on deposit in the First National Bank, his regular depository, about an hour and a half after he received it from Mrs. Beckman.

Roscoe P. Brune, liquidator of the Sturdivant Bank, testified that thirty per cent. of plaintiffs' account in the defunct bank had been paid by him, which would leave the amount of $61.32 that plaintiffs, at the time of the trial, stood to lose if no further payments should be made by the liquidator of the bank. The liquidator further testified that the bank still owns some real estate in Canada and some property in Chaffee, but that upon final liquidation, as a "conservative estimate," the bank would not pay out more than five or six per cent. in addition to what had already been paid. On cross-examination the liquidator testified that it might be possible that the Beckmans could be paid in full if he liquidator would strike a diamond mine on the property in Canada; that there was such a possibility but that it was far-fetched. On this point he testified: "Q. You haven't any hope about the diamonds then? A. No."

Plaintiffs contend that they were damaged by defendant's negligence, and argue that the fact that the exact amount of the damages

caused by said negligence is not susceptible of exact proof does not preclude their right to recover damages. They assert that, having shown all the facts which have a bearing upon the amount of their damages, the question as to such amount should have been submitted to the jury for their decision as other questions of fact; that the bare possibility of a diamond mine being discovered on land owned by the defunct bank should not preclude plaintiffs from recovering what a jury would assess as their probable damages in the light of the testimony of the liquidator; that the bank would probably not pay out more than five or six per cent. in addition to what had already been paid.

It will be noted that defendant's demurrer to the evidence was based upon the ground that plaintiffs failed to show "that they had been damaged by any act or failure to act by the defendant" but that the court sustained the demurrer for the "sole reason" that the testimony was "that there is a possibility of paying this claim in full by the liquidator on or before the final liquidation of the bank." We are of the opinion that the court's action was correct, but we think a wrong reason was given for such action. It should have been based on plaintiffs' failure to show any negligence on the part of defendant. That, however, does not preclude us from affirming the judgment if the evidence justifies such action, because it is well-established law that an appellate court, in reviewing a judgment for a defendant, on a demurrer to the evidence at the close of plaintiff's case, must determine whether the judgment was proper regardless of the theory on which it was based. [Huttig v. Brennan, 328 Mo. 471, 41 S. W. (2d) 1054; Holland Banking Co. v. Republic Natl. Bank, 328 Mo. 577, 41 S. W. (2d) 815; Southern Surety Co. v. Goltra (Mo. App.), 9 S. W. (2d) 661.]

In their brief plaintiffs assert that they established beyond question the negligence of defendant and that they were damaged by such negligence, and argue that the law does not permit one whose act has resulted in a loss to another to escape liability because the exact amount of damages caused by his negligence is not susceptible of exact proof. We think it is unnecessary to discuss the question of the uncertainty of the damages herein argued by both parties because we believe that, under the facts in evidence, there was no negligence of defendant shown, hence there was no basis for damages. There being no negligence shown, there could, of course be no liability on defendant for any damages.

We are unable to agree with plaintiffs' view that they "established beyond question the negligence of defendant." Plaintiffs' case being based upon negligence, it was a prerequisite to recovery that plaintiffs produce evidence showing defendant's negligence and that such negligence was the proximate cause of their injury or loss.

To constitute actionable negligence there must be evidence showing a duty or obligation which defendant was under to protect plaintiffs from injury or loss, a failure to discharge that duty, and an injury or loss directly resulting from such failure. Furthermore, the act or omission must have been such that it could reasonably be said of defendant, being judged by the standard of a reasonably prudent man under similar circumstances, that he either knew, or by the exercise of ordinary care would have known, that his act or failure to act would be likely to produce the injury or loss to plaintiffs resulting therefrom. [Davidson v. St. Louis-San Francisco Ry. Co. (Mo.), 229 S. W. 786.] A person is not required to anticipate or guard against occurrences which an ordinarily prudent person could not have reasonably anticipated. [Nelson v. C. Heinz Stove Co., 320 Mo. 655, 8 S. W. (2d) 918.] Negligence is "the want of such care as an ordinarily or reasonably prudent and careful man would exercise under similar circumstances." [Wilkin v. St. L. I. M. & S. Co., 101 Mo. 93, 13 S. W. 893.] Also, "Negligence is the failure to observe for the protection of the interest of another the degree of care, prudence and vigilance which the circumstances demand." [Wencker v. M. K. & T. R. Co., 169 Mo. 592, 70 S. W. 145.] The digests contain long lists of cases declaring and aplying the above principles. [See West Publishing Company's Missouri Digest, "Negligence," Key No. 1.]

In 38 Am. Jur., "Negligence," section 23, page 665, the general rule is stated that "A man cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge or reasonably was chargeable with knowledge that the act or omission involved danger to another." In the same work will be found this statement of the general rule:

"Generally speaking, no one is bound to guard against or take measures to avert that which, under the circumstances, a reasonably prudent person would not anticipate as likely to happen. Mischief which could by no reasonable possibility have been foreseen, and which no reasonable person would have anticipated, cannot be taken into account as a basis upon which to predicate a wrong." [38 Am. Jur., "Negligence," Sec. 24, page 669.]

In 45 C. J., under the title "Negligence," section 10, page 635, the general rule as to the elements of actionable negligence is stated thus:

"The first element of actionable negligence is a lack of care. No person is an absolute insurer of his acts, or the safety of others or their property, and if one is injured in person or property as a result of some act or omission of another, but such act or omission does not involve any lack of due or proper care, no cause of action arises but the injury suffered is *damnum absque injuria.*"

There is no evidence whatsoever in this record to show that defendant had any knowledge or information which would have led a reasonably prudent man under similar circumstances to have anticipated that the bank on which the check, given to him by plaintiffs, was drawn would fail to open its doors for business on the Monday following the Friday on which he received the check. On the contrary, the evidence shows that defendant acted as any reasonably prudent man would have acted under similar circumstances. He deposited the check in the bank where he did his regular banking business, and the evidence is undisputed that he deposited it within an hour and a half after he received it. There certainly was nothing in such conduct to warrant even the slightest inference of negligence on the part of defendant. In the absence of evidence showing that defendant knew or had reasonable cause to believe that the Sturdivant Bank was about to fail and close its doors, there was no duty on defendant to take plaintiffs' check immediately to said bank and procure the cash on it. To hold that defendant was required to cash plaintiffs' check at plaintiffs' bank immediately upon receiving it, or the next day, would be equivalent to saying that defendant was required to exercise not ordinary care but an exceptional and unreasonably high degree of care to save plaintiffs from a loss which defendant, under the evidence herein, had no reasonable ground to anticipate would occur. Such a ruling would be contrary to all accepted standards of negligence. There would be less justice and reason in holding defendant to be negligent under the facts in this record than there would be in holding plaintiffs themselves to have been negligent in failing to anticipate that their bank would fail and in failing to withdraw cash therefrom with which to pay their taxes before the bank closed its doors. If plaintiffs had no reason to anticipate the failure of the bank with which they themselves did business, most certainly it cannot be held on this record that defendant was negligent in failing to anticipate such failure.

Plaintiffs insist, however, that an affirmance of the judgment herein would be in conflict with two controlling decisions of our Supreme Court, namely, St. John v. Homans, 8 Mo. 382, and Wear v. Lee, 87 Mo. 358; and would also be in conflict with the opinions of our Courts of Appeals in the following cases: Rosenblatt v. Haberman, 8 Mo. App. 486; Koch v. Sanford Loan & Realty Co., 220 Mo. App. 396, 286 S. W. 732; Missouri Pac. R. Co. v. H. M. Brown Coal Co., 226 Mo. App. 1038, 48 S. W. (2d) 86; Farm & Home Savings & Loan Assn. of Mo. v. Stubbs, 231 Mo. App. 87, 98 S. W. (2d) 320; and Maryland Cas. Co. v. Dobbin, 232 Mo. App. 557, 108 S. W. (2d) 166.

It is argued by plaintiffs that, under the authority of the foregoing cases, defendant was guilty of negligence as a matter of law because he failed to present the check for payment to the drawee bank before the close of the next succeeding business day, the check having been

drawn and delivered to the payee in the same city where the drawee bank had its place of business. We have examined all of the above-cited cases and have reached the conclusion that they are clearly distinguishable from the case at bar. In each of said cases the suit was brought either by the payee or holder of the check to recover from the drawer or maker thereof a loss sustained though the closing of a drawee bank before the check was paid. The case at bar is not such a case. In this case plaintiffs are not payees or holders; they are the drawers of the check. They sought to pay with said check, not a private debt in an ordinary commercial transaction but a debt which they owed to the State and county for taxes. The check was delivered by plaintiffs to defendant as collector. The acceptance by defendant of the check did not and could not discharge the tax debt unless and until it was actually paid. Section 11082, R. S. Mo. 1939 (Mo. R. S. A., Section 11082), provides, among other things, that all State, county, township, city, town, village, school district, levee district and drainage district taxes shall be paid in gold or silver coin or legal tender, notes of the United States or in national bank notes. There are some exceptions in the above statute but they are not applicable to this case, hence need not be noticed here. Defendant received the check from plaintiffs as an accommodation to them because it is clear, under the above statute, that he could not, as collector, make a contract with plaintiffs to discharge their tax debt on mere receipt of the check. The parties in all the cases, *supra,* were free to contract as they pleased and their mutual rights and liabilities arose from their private commercial transactions unaffected by any public duty such as governed the parties in this case. Plaintiffs herein were obligated by law to pay their taxes in the manner prescribed by law while defendant could not give then a valid receipt until the taxes were actually paid. Defendant, therefore, occupied a legal relationship towards plaintiffs in connection with the check entirely different from that which existed between the parties involved in the cases relied on by plaintiffs herein.

Plaintiffs point out that the Supreme Court, in Wear v. Lee, 87 Mo. 358, said: "Where the payee to whom the check is delivered by the drawer receives it in the same place where the bank on which it is drawn is located, he may preserve recourse against the drawer by presenting it for payment at any time before the close of banking hours on the next day, and if in the meantime the bank fails the loss will be the drawer's." It will be noted, however, that the case at bar is not a suit by the payee against the drawer, as was the Wear case. This is a suit for damages by the drawers of the check against the payee. The language of the Supreme Court in the Wear case, *supra,* that "*the payee . . . may preserve recourse against the drawer by presenting it, etc.*" (Italics ours) is very far from holding that a drawer may have damages against a payee for the payee's

failure to present a check for payment to the drawee bank on the day after its delivery to the payee. We think the Wear case, *supra*, has no application to the facts in the case at bar. In none of the cases referred to was it held that the drawer's loss should or could be shifted to the payee regardless of the position or legal relationship of the parties. All of said decisions, while constituting authority which may be cited as shields of defense for the drawers of checks against negligent payees, in suits by such payees, were never intended to be used as swords of offense by drawers of checks in damage suits by them under such facts as are here involved. Each of said cases was decided on the particular facts therein, and those facts with respect to the position and relationship of the parties being widely different from the facts in the case at bar, such cases do not support plaintiffs' contention herein. If the positions of the parties herein were reversed and the check had been given in discharge of a private debt or in an ordinary commercial transaction as distinguished from a debt for public taxes payable only in a certain way, and the payee were suing plaintiffs as the drawers of the check, then the cases referred to would be in point because plaintiffs, as defendants in such a suit, could set up as a defense the failure of the payee to present the check in due time. However, said cases, as we view them, constitute no authority to hold that the drawers of the check herein, having been required to make good to a third party, namely, the State and county, a check which they drew on a bank that failed at the close of business on the next day after the check was delivered, can shift their loss to the payee whom plaintiffs made their agent to procure payment of the check to pay their tax debt.

The cases from other States cited by plaintiffs, in respect of the position of the parties, are similar to those of this State above referred to and are not in point herein.

Our Negotiable Instruments Law, Section 3201, R. S. Mo. 1939 (Mo. R. S. A., Sec. 3201), provides:

"A check must be presented for payment within a reasonable time after its issue or the *drawer will be discharged from liability thereon to the extent of the loss caused by the delay.*" (Italics ours.)

The above statute is merely declarative of the common law and of the law generally as stated in the cases cited by plaintiffs herein. It is in the nature of a defensive weapon for the benefit of the drawer of a check against a payee or holder, and clearly was not intended to apply to such a case as we have before us. Plaintiffs herein are not seeking to be discharged from liability on their check. They are not suing on the check at all. They are suing to recover from defendant, in his individual capacity, what the law required them to pay to a third party, namely, the State and county, for taxes owed by them to said third party.

Holding, as we do, that the cases relied on by plaintiffs are not in point, we must decide this case on the general law of negligence, the applicable principles of which we have heretofore set forth herein. Under those well-settled principles, we must hold that no negligence of defendant was shown.

How can it be said that defendant was negligent when he simply did what is being done all over the land every day? He did what any reasonably prudent man would do under the same or similar circumstances—he promptly deposited the check in his own bank within a very short time on the day he received it. To hold, on the facts in this case, that defendant was negligent would establish a rule in this State that would lead to tremendous confusion. It is well known that tax collectors accept, for the purpose of tax payments, checks drawn on numerous banks within their districts. Some of such banks are a considerable distance from the collector's office. Under such a rule as plaintiffs contend for, tax collectors in the State would be compelled, in self-protection, to refuse to accept the checks of thousands of taxpayers who customarily pay their taxes by checks. All such taxpayers would be required to go to banks and procure cash or bank notes with which to pay their taxes, or, if tax collectors desired to accommodate taxpayers by accepting their checks, the collectors, to protect themselves from damages, would be required, especially in the larger cities, to hire extra messengers to go to the drawee banks and there procure the cash with which to pay the taxes. Such a rule would lead to an absurd result and be wholly impracticable in this modern day when a vast amount of financial business is transacted through the medium of checks.

On the facts herein, we hold that the court did not err in sustaining defendant's demurrer. The judgment is therefore affirmed. *Hughes, P. J.,* and *Anderson, J.,* concur.