MOSCOW K. RICHMOND, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, October 5, 1908.**

1. **RAILROADS: Crossing: Negligence: Duty of Engineer: Fireman.** Where an engineer is approaching a railroad crossing where a train on an intersecting road may be·met and is so situated that he cannot see the crossing, it is his duty to use the fireman's eyes, however busy the latter may be, to ascertain the conditions at such crossing; and his failure to give signals and proceeding to cross without intending to stop, is inexcusable negligence.

2. ———: ———: ———: **Elements.** The component parts of negligence are (1) a legal duty to use due care, (2) a breach of that duty, (3) the absence of distinct intention to produce the precise damage, if any, which actually follows.

3. ———: ———: ———: **Engineer: Passenger: Proximate Cause.** An engineer negligently approached a railroad crossing so as to alarm the manager of an approaching train on the intersecting road for the safety of his train. The latter in his excitement left his train and ran and flagged the engineer, who stopped his engine before reaching the crossing and avoided a collision. On the approaching train, which was not accustomed to carrying passengers, a passenger who was riding on the top of a car, became alarmed, started down the ladder and in his fright jumped off and was injured.

Richmond v. Railroad.

*Held*, the engineer's negligence in approaching the crossing without signalling or looking out for danger, was not the proximate cause of the passenger's injury, but the latter's fright and inexperience was such cause.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*Elijah Robinson* for appellant.

(1) Defendant, the Missouri Pacific Railway Company, was not guilty of any negligence. (a) Defendant's engineer approached the crossing in question in the usual and customary manner and with his engine under perfect control. Kleiber v. Railroad, 107 Mo. 240. (b) Negligence consists of failure to discharge a duty which one person owes to another. Henry v. Railroad, 76 l. c. 295. (2) In this case plaintiff was occupying a position where he ought not to have been, and where defendant's employees had no reason to anticipate he would be, and they owed him no duty except not to wantonly or recklessly injure him. Hickey v. Railroad, 14 Allen 429; Carroll v. Transit Co., 107 Mo. 653; Tuley v. Railroad, 41 Mo. App. 432; Harris v. Railroad, 89 Mo. 233; Railroad v. Hoosey, 44 Am. Rep. 120; Brown v. Railroad, 49 Mich. 153; Doggett v. Railroad, 34 Ia. 285; Torrey v. Railroad, 147 Mass. 412; Bates v. Railroad, 147 Mass. 255; Files v. Railroad, 149 Mass. 206. (3) So far as his legal rights in relation to this defendant are concerned, he occupies the position of a trespasser on the Belt Line track approaching the crossing in question, and this defendant would have owed no duty to such trespasser except not to wantonly or recklessly injure him. Carr v. Railroad, 195 Mo. 214; Railroad v. Monday, 31 A. & E. R. R. Cases, 425; Turner v. Thomas, 71 Mo. 596; Henry v. Railroad, 76 Mo. 425. (4) Plaintiff's injury resulted from a

rash apprehension of danger that did not really exist, and this defendant ought not to be held liable therefor. Kleiber v. Railroad, 107 Mo. 240; Railroad v. Felton, 33 A. & E. R. R. Cases, 533; Jones v. Boyce, 1 Star. 483; Coulter v. Express Co., 56 N. Y. 585; Peck v. Railroad, 50 Conn. 379; Harris v. Railroad, 89 Mo. 233; Smotherman v. Railroad, 29 Mo. App. 265; Railroad v. Wallen, 65 Tex. 568; Railroad v. Ware (Ky.), 1 S. W. 493.

*Walsh & Morrison* for respondent.

(1) Defendant was guilty of negligence. Kleiber v. Railroad, 107 Mo. 240; Morgan v. Railroad, 159 Mo. 279; Railroad v. Stoner, 51 Fed. 649; Railroad v. Railroad, 98 Mo. App. 222; McManus v. Railroad, 116 Mo. App. 110. (2) Negligence on the part of the Belt Line crew was not imputable to plaintiff. Sluder v. Transit Co., 189 Mo. 107. (3) Plaintiff was rightfully upon the train. Carroll v. Railroad, 88 Mo. 248; Railroad v. Blumenthal, 160 Ill. 40, 43 N. E. 809; Railroad v. Ashley, 67 Fed. 209, 14 C. C. A. 368; Railroad v. Beebe, 174 Ill. 13, 50 N. E. 1019; Railroad v. Lockwood, 17 Wall. 357; Whitehead v. Railroad, 99 Mo. 263; Railroad v. Brown, 123 Ill. 162, 14 N. E. 197. Riding on top of the car was not contributory negligence. Railroad v. Carpenter, 56 Fed. 451; 6 Cyc. 653. (4) Defendant's negligence was the proximate cause of plaintiff's injury. Kleiber v. Railroad, 107 Mo. 249; McManus v. Railroad, 116 Mo. App. 110; Ephland v. Railroad, 57 Mo. App. 147; McPeak v. Railroad, 128 Mo. 652; Bischoff v. Railroad, 121 Mo. 224; Williamson v. Transit Co., 202 Mo. 376. (5) Plaintiff was not negligent in jumping from the car. Kleiber v. Railroad, supra; Bischoff v. Railroad, supra; Adams v. Railroad, 74 Mo. 560; Ephland v. Railroad, supra.

JOHNSON, J.—Plaintiff brought suit against the Missouri Pacific Railway Company and the Kansas City Belt Railway Company for damages on account of personal injuries alleged to have been caused by the negligence of the defendants. He dismissed the Belt Railway Company from the action during the trial and recovered judgment against the appealing defendant in the sum of two thousand dollars.

The main contention of defendant is that the court should have directed a verdict in its favor. Under the terms of a written contract, plaintiff delivered two cars of cattle to the Choctaw, Oklahoma & Gulf Railroad Company at Hartshorn, Indian Territory, for shipment to the market at Kansas City. The contract was not introduced in evidence and we are not advised of its terms, but it appears from the evidence that a through shipment was contemplated by a route which required the initial carrier to deliver the cars to the Kansas City Southern Railway Company at Howe, Indian Territory, for transportation to the Kansas City Terminal Yards of that company located at Sheffield, a town on the eastern border of Kansas City, and required that company to deliver them at Sheffield to the Belt Railway. A stock pass was issued to plaintiff by the Choctaw Company which entitled him to free transportation to Kansas City on the trains that carried his cattle, and he used the pass to Sheffield. The caboose in which he arrived at that point was stopped close to the tracks of the street railway company and plaintiff could have gone to the stockyards on a street car, but he elected to ride on the Belt Line train which picked up his cars of cattle. That train carried no caboose or other passenger car and consisted of an engine and forty-five freight cars. The engine was at the east end of the train and plaintiff's two cars were at the opposite end. Plaintiff placed himself on the top of the second car from the end with the knowledge

and consent of the trainmen. The foreman of the crew was on the top of the same car, or on that of the end car, and brakemen were stationed on different parts of the train. The stock cars were to be taken to the quarantine yards of the Kansas City Stock Yards Company, some five or six miles westward. They had arrived at Sheffield in the middle of the afternoon of July 1, 1903, too late to reach the stock yards for that day's market. It does not appear that plaintiff could have performed any service to the cattle by riding on the top of the Belt Line train. He could have reached the stockyards as quickly or, perhaps, more quickly on the street car and it was not necessary for him to be there at the moment of their arrival. On that subject he testified on cross-examination:

"Q. Was it necessary for someone to go with the cattle to look after them? A. Not altogether. I ship sometimes without sending anyone. Q. You could have come up just as well on a passenger train? A. Yes, but it just cost me a little piece of money . . . Q. You had shipped sufficiently to know that the cattle would be handled by the railroad company and the stockyards company and assigned to the pen for the commission man to whom they were consigned, didn't you? A. Yes, sir. Q. And that you could not help or hinder that in any way even if you were there? A. Yes, sir. I like to be there. Q. And you knew that those cattle would not be offered for sale until the next morning, didn't you, if they got in here at four or five o'clock in the evening? A. Yes, sir. Q. You knew that; so there was nothing you could do at the quarantine yards that afternoon, was there? A. I could have went over and seen them unloaded and see what kind of condition they were in and ordered them fed."

Shortly after the Belt Line train we have described started on its westward journey, it approached the track of defendant which runs north and south, stopped when

the end car was, perhaps, 150 feet from the crossing, waited a few minutes for a clear track and after the engine gave the usual signal, started forward.    Just before this, a switch engine of defendant, which had been working in that vicinity crossed from the south to a point from 150 to 200 feet north of the crossing, stopped for some cars to be coupled and then started back towards the crossing pulling three cars. The engine was headed south, the engineer was seated in the west side of the cab and the fireman was shoveling coal into the fire.    The Belt Line train began moving toward the crossing after the switch engine had crossed from the south, and before it started to return, and had the right of way.    It is admitted that neither the engineer nor fireman saw the Belt Line train nor knew of its presence.    The engineer had his view toward the east obstructed by the boiler and the fireman was not looking in that direction and his attention was absorbed by the work he was doing.    Neither heard the signal given by the Belt Line engine and the switch engine did not whistle for the crossing.    When the foreman of the Belt Line train first observed this situation, each train was running toward the crossing at approximately four or five miles per hour.    Plaintiff fixes the rate of speed at from ten to twelve miles per hour, but his estimate is so obviously in conflict with the plain physical facts of the situation that it possesses no evidentiary value. Fearing a collision, the foreman, who then was on the end car, began shouting and frantically making the stop signal.    At the same instant, he ran to the ladder on the north side of the car and descended rapidly to the ground.    At that time, he was from fifty to seventy-five feet from the crossing.    He ran west as fast as he could to defendant's track to a point where defendant's engineer could see him and, by vehement gestures and language, conveyed his warning.    He testified that the switch engine was stopped in twenty or twenty-five feet

after the reception of this warning and that it was from five to ten feet from the crossing when it came to a full stop. Plaintiff states that the engine was closer than that to the car on which he had been riding. No collision occurred and no damage was done except the injuries plaintiff received in his attempt to escape from what appeared to him imminent peril. When he observed the actions of the foreman and what occasioned them, he became greatly alarmed for his own safety and ran to the ladder at the northwest corner of his car. He descended half way to the bottom of the ladder when complete panic overtook him and he jumped to the ground. A severe injury was the consequence. It appears from uncontradicted evidence adduced by defendant that in switching over crossings of tracks used at freight terminals (the tracks under consideration were of this class), it is customary, in order to save time, for the engine not entitled to the right of way to approach so near to the crossing before stopping that only sufficient space is left for the free passage of the other train.

We do not hesitate in saying that, under the conceded facts in evidence, defendant's engineer was guilty of gross negligence in the manner in which he approached the crossing. It will not do to excuse his conduct on the ground that he had his engine under control, and, in fact, stopped where he would have stopped had he known of the presence of the other train. His ignorance of the fact that another train had become possessed of the right of way and was using it, stamps his action in failing to signal and in proceeding to the crossing without any intention of stopping, with inexcusable negligence. Knowing, as he did, that his fireman was not on the lookout and that he himself could not see toward the east, for all practical purposes, he just as well might have attempted to run the crossing blindfolded, as far as knowing of the approach of a

train from the east was concerned. Nor is it any excuse for him to say that as the other train was backing, it was the duty of a brakeman from that train to come on foot to the crossing to warn him of its approach. Plaintiff's witnesses deny the existence of such rule, but whatever the rule may have been, reasonable care would have prompted an ordinarily prudent person in the situation of the engineer to use every reasonable precaution to inform himself of the condition of the crossing before attempting to run over it. There was no obstruction to the fireman's line of vision. He had but to look to see the train, and the engineer was remiss in not using the fireman's eyes.

We give our approval to the following extract from the opinion of Judge Shiras in Railroad v. Stoner, 51 Fed. Rep. 649: "Aside from the provisions of any specific rule upon the subject, the law requires of parties charged with the control and management of trains moving upon intersecting lines of railway, that as they approach a crossing, they must exercise due care to secure the safe passage of the train over the same, and in that respect they owe this duty not only to those whose persons or property may be upon the train controlled by them, but also to those who may be upon the train of the other intersecting line. In the performance of this duty, it is incumbent upon the parties in control of the train that they shall exercise a proper lookout for the approach of another train and they must also have their own train under proper control so that if need arises it can be promptly stopped. The trainmen know and are bound to know that all points where railway lines cross at grade are places of danger and they must, in the handling of trains intrusted to them, exercise the care which the presence of this known danger demands of them. Certainly it would be negligence of the grossest kind to attempt to make a crossing without taking pains to see whether there was another

train at or near the crossing and without reducing the speed sufficiently to place the train under the control of the engineer, for unless these precautions were taken, a collision would be inevitable if another train happened to be upon the crossing, even rightfully, when the other reached it."

The next question to engage our attention is whether the negligence of defendant we have just discussed constituted a breach of any duty defendant owed to plaintiff. The component parts of negligence are (1) a legal duty to use due care, (2) a breach of that duty, (3) the absence of distinct intention to produce the precise damage, if any, which actually follows. Bindbeutal v. Railway, 43 Mo. App. 463, where Judge SMITH quotes this definition from Shearman and Redfield on Negligence. In every negligence case, to support the cause of action, it is essential that plaintiff show that the wrongful act of the defendant was in violation of some duty owed to him by the defendant. If an ordinarily careful and prudent person in the position of defendant's engineer would have had no reason to anticipate the presence of a passenger on the top of a freight train which was not designed nor equipped for carrying passengers, it is difficult to recognize any logical ground on which to found any higher duty from the engineer to plaintiff than that of not injuring him wantonly or willfully. On the other hand, if the engineer had any reason to anticipate that a stock man might be riding on that train as a passenger then it became his duty so to handle his engine that no negligence of his either would cause the train to collide or would throw an ordinarily prudent person in the position of the passenger into a condition of panic from fear of injury from a threatened collision.

In Whitehead v. Railway, 99 Mo. l. c. 269, the Supreme Court said: "The proposition that the defendant owes no duty to one riding on a freight train un-

less he is a passenger in the full sense of the term, does not meet with our approval. If one is riding on a freight train, with the consent of the agents in charge thereof, the company owes him a duty, though he is there against the rules of the company. . . . Even to a trespasser, the defendant is liable for injuries inflicted for want of ordinary care after the perilous position of the party is discovered." [Carr v. Railway, 195 Mo. 214.] It is not necessary for us to discuss the nature of the duty to plaintiff assumed by the Belt Line Company by the act of its trainmen in suffering him to ride on a train not intended to carry passengers. Certainly an isolated breach of that company's rules by its servants should not be given the effect of imparting notice to the servants of an independent intersecting carrier of the fact that a passenger was being carried. The engineer did not look at the train, did not see plaintiff riding on it, and the question is, should he have anticipated that plaintiff or some other passenger might be there? We answer in the negative. Here we have a terminal railroad engaged in the business of doing the terminal work of various railroads centering in a large city. It operates its freight trains without providing any equipment for the transportation of passengers. There is no proof that it was customary to carry passengers on its trains, and it clearly appears from the admissions of plaintiff that it was not at all necessary for him to be where he was. Under all the circumstances of the case, it is clear that defendant's engineer had no reason to anticipate that a passenger was being carried on that train and it cannot be said that he owed plaintiff any duty at all until he knew or in the exercise of reasonable care should have known of his presence. Granting that he should have discovered plaintiff on the top of the car had he and his fireman kept a proper lookout, still it is not shown that there was anything in the situation to indicate that plaintiff

was not a trainman, but a passenger; so that the very most that may be found in the nature of a duty from the engineer to plaintiff was that which the engineer might have owed to a trainman in the position of plaintiff. With this conclusion, there is no escape from the further conclusion that plaintiff has failed to make out a case. Clearly, the negligence of the engineer was not the proximate cause of his injury. A trainman of ordinary prudence in his situation would not have been terrified by the thought of personal injury. The foreman of the train grew excited over the prospect of damage to his train, but had no fear of personal injury nor reason to fear it. The trains were far enough from the crossing and were approaching each other so slowly that he descended from the top of his train, ran forward fifty to seventy-five feet to the crossing and flagged the other train, all in time to avert a collision. Had another trainman been in plaintiff's position, he would have realized that he was in no personal danger and would not have resorted to jumping from the ladder. Plaintiff's fright, while natural enough, was due to his own inexperience and his injury was not the result of the breach of any duty owed him by defendant.

The judgment is reversed. All concur.