TIMOTHY O'CONNELL et al., Respondents, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, July 9, 1910.

1. **NEGLIGENCE: Proximate Cause.** If, notwithstanding the defendant's negligence, the occurrence would still have happened from other causes, though defendant had not been negligent, then defendant's negligence cannot be regarded as the proximate cause.

2. ———: ———. M. and O. were the hostler and assistant hostler and K. the pilot of a railway train which had discharged its passengers at the station in a city, in the nighttime. They received the train from the crew which brought it in and it was their duty to back it out from the station to the yards where it was to be made ready for another trip. M. occupied the place

of engineer and O. was his assistant on the engine, while K's position was on the rear car (front as it backed), and, while he was superior to the others, a part of his duties was that of a flagman. Something became wrong under the engine and it was stopped. M. and O. got under it and were lying on their backs at work when K. left his place and came back to them to see why the train had stopped. He started to return, but before getting to the rear car another train collided with it, which moved the engine and killed O. *Held*, that it could not be said, as a matter of law, that the occurrence would have happened if K. had been at his post; that the latter's negligence was the proximate cause of O's death.

Appeal from Jackson Circuit Court.—*Hon. Thos. G. Seehorn*, Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

The court should have sustained defendant's demurrer to plaintiff's evidence. There was no evidence tending to show negligence on the part of the defendant. Powell v. Railroad, 76 Mo. 80; Commissioner v. Clark, 94 U. S. 284; Bank v. Bank, 10 Wall. 639; Jackson v. Hardin, 83 Mo. 175; Avery v. Fitzgerald, 94 Mo. 207; Long v. Moon, 107 Mo. 338; Moore v. Railroad, 28 Mo. App. 622; Peck v. Railroad, 31 Mo. App. 123; Zurfluh v. Railroad, 46 Mo. App. 636; Peffer v. Railroad, 98 Mo. App. 291; Railroad v. Shirtle, 97 Pa. St. 450.

*Guthrie, Gamble & Street, Boyle & Howell* and *A. F. Smith* for respondent.

Deceased was not guilty of contributory negligence. O'Connell did not know, as stated by appellant, that King was not at the rear end of his train. That is a mere inference from King's testimony which is squarely disputed. No evidence is shown of any experience on his part sufficient to charge him with knowledge of any danger in the situation as a matter of law. He is entitled to the benefit of the presumption in favor of one deceased. He had the right to rely upon obedience to an order from his superior involving no danger.

ELLISON, J.—Plaintiffs are the father and mother of Thomas O'Connell, who was in the employ of defendant at the time of his death. He was killed in the State of Kansas, through the alleged negligence of defendant. Plaintiffs recovered judgment in the trial court.

It appears that when one of defendant's trains arrived at the union station in Kansas City, Missouri, and discharged passengers and baggage, it is then taken in charge by a new crew employed for the purpose of taking the engine and empty cars some distance back into the yards maintained by defendant in the adjoining State of Kansas. This crew consisted of a hostler who acted as engineer, an assistant hostler, and a pilot who occupied the place of conductor and brakeman. The place for the pilot was on the rear end of the train. Defendant was killed in the nighttime. The train, just arrived, had discharged its passengers and this crew, consisting of Murphy as hostler or engineer, the deceased as assistant, and one King as pilot, took possession and began to back out of the station down to the yards. The train had proceeded in this backing movement some distance when Murphy and deceased discovered that a brake beam had become loosened and was dragging on the ground. They stopped the train and got down under the car to fix it sufficiently to proceed to the yards. King at the rear end (front, as they moved backward), not knowing what was the matter, walked up to the engine and found them at work under the car. It is said that he asked them what had occurred, but it does not appear that they knew it was King who asked the question. King then walked around the engine and started back to his position at the end of his train. Before he reached there, a freight train of twenty-four cars belonging to the Chicago & Alton Railway Company, backing into the station on the same track, collided with the standing train of defendant and

moved it forward so that O'Connell was killed and Murphy was injured.

The evidence came near to being conclusive that it was King's duty to protect the rear of the train, and that it was inexcusable negligence for him to go up to the engine and leave his end of the train exposed. There is something said about his relying upon what is termed the "block system" and that he supposed the train was within the space where another train could not approach. But there was other evidence to show that the train was not thus protected and that if it was thought to be, it was his duty to be at the end, as an additional safeguard.

The only question of importance we need to consider is the point whether King's negligence was the proximate cause of the collision. Defendant insists that if King had remained at his post and signalled the Chicago & Alton train to stop, the collision would still have occurred. It is true that if the evidence shows the happening complained of would have occurred though there had not been any negligence, then such negligence cannot be considered as the proximate cause. [Killian v. Railroad, 86 Mo. App. 473; Richmond v. Railroad, 133 Mo. App. 463.] Defendant's position is based on evidence showing that the incoming Chicago & Alton train was composed of an engine and twenty-four freight cars and that besides the engineer and fireman there were two brakemen, one on the rear car and one at about the middle of the train. That signalling was done by the brakeman on the rear signalling with his lantern the one in the middle and the latter repeating to the engineer. At a point near to where the end of defendant's train had been left exposed by King, there was a curve in the track so that the middle and rear brakeman could not see each other and signals between them were impossible, while a large part of the train was on this curve. So that even though King had been at his post and signalled the rear brakeman to stop, that brakeman

could not have connected with the engineer, and thus the collision inevitably would have occurred. Defendant supports this position by referring to the evidence, which was not contradicted, showing that the rear brakeman saw the light in the rear car of defendant's train and immediately began to try to reach the middle brakeman with signals, but could not do so by reason of the curve.

There was, however, other evidence in this connection which, we think, so modifies what we have just stated as to leave us without the right to say, as a matter of law, that the collision would have occurred had King been at his post performing his duty. It was shown that the rear brakeman on the Chicago & Alton train first noticed defendant's standing train by observing the lights in the rear car shining through the small ventilator windows at the top of the car, and then he began his effort to reach the middle brakeman. It was further shown that there was a signal tower near by, situated in the curve, belonging to another railway company, and the man there seeing the effort of the rear brakeman, leaned out of the tower and gave the signal to the engineer, who immediately began to check his train and had it "slowed down" when it struck defendant's car. When the brakeman on the Chicago & Alton train first observed the light in defendant's car, he was about six car-lengths away. He was not certain at first what it was, but began his effort to reach the middle brakeman. The train could have been stopped in three car-lengths and it had double that distance to go. But between his first effort and the time the man in the tower had given the signal, the train had run four or five car-lengths, and it could not be stopped in time to avoid the collision. It would be extending indulgence in favor of defendant's theory much too far to say that such evidence conclusively shows that had King been at his post he could not have prevented the occurrence. It is quite probable that had he been at his post on the look out, he could have at-

tracted the attention of the Chicago & Alton brakeman, or the man in the tower, either by the use of his lantern or hallooing. It is natural to suppose that such an effort would have attracted the attention of those men quicker than the mere flicker of a light through the top of the car. In view of the evidence tending to show that if the engineer on the Chicago & Alton train had begun his effort to stop a little earlier than he did, that he could have avoided striking the other car, we think ourselves justified in holding that defendant's point is not made good by the evidence.

What we have written covers the complaint as to the refusal of defendant's instruction No. 2. It was properly refused.

Defendant's rules required that when a train stopped under circumstances where it might be overtaken by another train, that a flagman should be sent back. We think King's duties were shown to include the duties of a flagman, and have no doubt of the propriety of the court's action in admitting the rules in evidence.

We see no reasonable grounds whatever for defendant's position that deceased was guilty of contributory negligence.

Complaint is made of the amount of the verdict. The statute is partly penal and the maximum sum is ten thousand dollars. We therefore do not feel justified in saying that six thousand five hundred dollars is an excessive allowance.

We think the judgment should be affirmed. All concur.