MARYLAND CASUALTY COMPANY, A CORPORATION, APPELLANT, v. PRESTON DOBBIN, RESPONDENT.—108 S. W. (2d) 166.

Kansas City Court of Appeals. July 19, 1937.

558

*Harris & Koontz* for appellant.

*Henry M. Beardsley, Harry L. Donnelly* and *J. John Gillis* for respondent.

REYNOLDS, J.—On March 8, 1934, the plaintiff filed its petition in the circuit court of Jackson county against the defendant Preston Dobbin and the Logan Jones Dry Goods Company, by which it sought judgment against the defendant Dobbin and the said dry goods company for an alleged balance due it in the sum of $603.14, on account of premiums on insurance policies issued by it to the said dry goods company through the defendant Dobbin, acting as agent or broker of said dry goods company.

The sum sued for is claimed by the plaintiff to be the net balance due it on account of said premiums, after all credits for return premiums on the cancellation of said insurance policies and commissions which appear to have been made have been allowed.

The petition charges that, under an agreement with the plaintiff, the defendant Dobbin placed with the plaintiff certain lines of insurance controlled by him, upon which he was to receive a commission on the premiums received or due from such business from the plaintiff, under which agreement he guaranteed the payment to the plaintiff of all premiums on any policies of insurance placed by him with the plaintiff, if not paid by his customer; that, on November 1, 1932, the defendant Dobbin, as representative of said Logan Jones Dry Goods Company, placed with the plaintiff an order for certain policies of insurance for the said Logan Jones Dry Goods Company, upon which order the plaintiff issued such policies to and for the benefit of the said dry goods company; that the total premium on said policies amounted to the sum of $2,126.34; that the defendant Dobbin was entitled to a commission on such basis in the sum of $372.11; that the net premium due to the plaintiff on said policies, after deducting therefrom the commissions due the defendant Dobbin, was the sum of $1,754.23; that no part of the said sum had been paid by either of the said defendants to the plaintiff; and that, thereafter, the defendant ordered the cancellation of the said policies by the plaintiff, in pursuance of which order the plaintiff cancelled the same upon the short rate basis, according to the provisions of said policies; that, upon such cancellation, the defendant became entitled to credit in the amount of return premiums in the sum of $1,348.18; that, by reason of an overcharge on another policy written by the plaintiff for the said dry goods company, the defendant became entitled to another credit of $45.87, making a total amount of credits to which the defendant was entitled the sum of $1,394.05; that, upon the cancellation of said policies, the plaintiff was entitled to charge back against the defendant Dobbin $243.96 from the commission which had been allowed him; that, by reason of the premises, the balance due the plaintiff from the defendant, after allowing all of such credits, amounted to the sum of $603.14.

The defendant Dobbin answered by way of general denial and counterclaim, in which he asked affirmative and equitable relief upon the facts set out in his answer and counterclaim and for judgment against the plaintiff in the sum of $1,184.03. In such answer and counterclaim, the defendant Dobbin admitted the procurement by him of the issuance of the insurance policies mentioned in the plaintiff's petition to the said dry goods company and admitted that the premiums thereon amounted to $2,126.34, upon

which a commission was due him from the plaintiff in the sum of $372.11, leaving a balance due the plaintiff, after deducting such commissions, in the sum of $1,754.23. It is further alleged therein that the defendant had been engaged for many years in placing orders for insurance with the plaintiff, as agent of both the plaintiff and the insured, and in remitting to the plaintiff, when such policies were issued, by check the amount of premiums due it less his commissions; that such checks had always been duly presented by the plaintiff in due course and, upon the receipt of said checks and the payment thereof, his accounts were satisfied; that, on January 16, 1933, the defendant mailed to the plaintiff at its office in Kansas City, Missouri, his check in the sum of $1,754.23 drawn on the Pioneer Trust Company, a bank in Kansas City, Missouri, in full payment of the balance due on the premiums described in the plaintiff's petition and sued for by it in this case; that said check was received by the plaintiff in due course on the next day, January 17; that, at such time and for a reasonable time thereafter, there were funds to his credit in said trust company for the payment of said check, more than sufficient to pay the same in full; and that said check could have been cashed by the plaintiff at any time up to and including the close of the banking day of January 24, 1933, but that said trust company failed to open for business on January 25, 1933, and was placed in the hands of the State Finance Commissioner for liquidation without said check ever having been presented by the plaintiff to it for payment. It alleges that the plaintiff received said check on January 17, 1933, and, at all times from and after said date, had the same in its possession and still has the same in its possession and that it was its duty to present said check for payment before the close of the business day following its receipt and to credit the defendant's account with payment in full. It alleges that the plaintiff falsely informed the defendant that it had never received such check and never had such check and refused to continue such policies in force and forced the defendant to permit said policies to be canceled as of February 1, 1933, although the premiums had been paid it thereon, and to place said insurance elsewhere to protect the said dry goods company; that, at the time of the plaintiff's refusal to continue such policies in force, the plaintiff had said check in its possession and falsely informed this defendant that it did not have such check and that it had never received it; and that it was its duty to have known that it had received such check and that it had possession of the same. It alleges that, by reason of the acts of the plaintiff, the defendant was compelled to procure other insurance for the said dry goods company equal in amount to the insurance provided by the policies canceled, upon which he was entitled to a commission for the serv-

ices performed in placing and procuring the same in the sum of $372.11. The defendant alleges that, through the wrongful acts of the plaintiff in falsely representing the facts as to the receipt and possession of the check mailed it by him, he has been deprived of the sum of $1,754.23, the amount of such check, and has been compelled to expend a similar sum to procure other insurance replacing that canceled; that what, if any, amount would ever be paid by the Pioneer Trust Company on such check cannot at this time be determined; that the defendant has no adequate remedy at law to settle and determine the accounts due between himself and the plaintiff; that, upon the cancellation of said policies, the plaintiff was entitled to a credit of $475.09 for the amount of premiums due it upon such cancellation on a *pro rata* basis; and that the plaintiff wrongfully canceled said policies on the short rate basis and retained a greater amount of the premiums than that to which it was entitled. It also set up an overcharge of $7.87 on another policy procured from the plaintiff by the defendant for the said dry goods company for which the defendant asked credit. It seeks equitable and affirmative relief upon the facts stated therein. The prayer thereof is as follows:

"Wherefore, this defendant prays the court to declare that by virtue of the facts herein stated the account between the plaintiff and defendant for the sum of $1754.23 was settled in full and that the plaintiff had no right to attempt to collect the same again or to cause the defendant to cancel the same and get new insurance in its stead. That by reason of said wrongful statements and acts of the plaintiff herein, the plaintiff is indebted to the defendant in the sum of $1754.23 and $372.11, commissions earned in replacing said insurance, plus $7.87 over-charge on policy No. LD6936, or a total in all of $2143.21, against which the plaintiff is entitled to a credit of $475.09 for the *pro rata* premiums for the time the policies of insurance mentioned in plaintiff's petition were in force, and that the plaintiff be ordered and directed to pay to this defendant the sum of $1659.12, the total amount due, less said credit, with interest from March 24, 1933, and that the plaintiff be declared to be the owner of and entitled to any payments in the liquidation of the affairs of said Pioneer Trust Company on said check for $1754.-23 and that judgment be entered accordingly and that the court grant to this defendant, such other and further relief as to the court may seem just and equitable in the premises."

The reply is a general denial.

The facts in the case appear from a stipulation of the parties with respect thereto, introduced in evidence, supplemented by statements of counsel in the nature of admissions against interest or statements of counsel agreed to by the opposing counsel and from

certain letters, Exhibits 1 to 7 introduced by the plaintiff and Exhibit A introduced by the defendant.

The stipulation is as follows:

"1. That the Maryland Casualty Company is an insurance company engaged in the writing of general casualty and surety insurance, and during all of the times herein mentioned, had either a general agent or a resident manager in Kansas City, Missouri.

"2. That the defendant, Preston Dobbin, during all the times herein mentioned, was engaged, among other things, in the general insurance business, acting both as an insurance agent and an insurance broker, writing business which he placed with various insurance companies.

"3. That the defendant, Preston Dobbin, since the year 1928, had arrangements with the plaintiff by which he placed such business as he might desire, of the character written by the plaintiff, with the plaintiff, and received for such business the general commission on the general broker or producer's basis.

"4. That for many years the defendant, Preston Dobbin, had handled and had the placing of the general insurance business of Logan Jones Dry Goods Company and on or about April 1, 1932, placed with the plaintiff a policy to defendant, Logan Jones Dry Goods Company, being elevator policy No. LD-6936, upon which there was charged and paid a premium of $89.10. It is agreed that the premium on this policy should have been $47.25 and that there was an over-charge of $41.85, to which defendants are entitled as a credit.

"5. That on or about November 1, 1932, the defendant, Preston Dobbin, procured plaintiff to write and issue to the defendant, Logan Jones Dry Goods Company, policy No. LD-16269, for which there was a premium of $148.50 charged, and policy No. LD-16270 for which there was a premium of $148.50 charged, and policy No. 42-006568 for which there was a premium charged of $1826.82.

"That on November 19, 1932, there was an endorsement placed on this last mentioned policy providing additional coverage for which there was an additional premium charged of $2.52, making the total original premium charge $1829.34.

"This policy No. 42-006568 covered the premises on Main Street, as well as premises at 12th and Grand Avenue, and after the cancellation of the policies, it was found there was an error in the classification of the premises on Grand Avenue on which the rate was based, which was corrected and entitled defendants to a credit of $245.80, which reduced the premium on policy No. 42-006568 to $1583.54.

"That the defenant, Logan Jones Dry Goods Company, paid to defendant, Preston Dobbin, the amount of premiums due on said policies on or before January 16, 1933.

"6. That defendant, Preston Dobbin, on February 1, 1933, sent said last three named policies to the plaintiff with directions to cancel same and the same were cancelled as of date, February 1, 1933.

"7. It is agreed that on a short rate basis of cancellation the return premium on policy No. 42-006568 after adjusting the premium to $1583.54 is $950.12 and that on a pro rate basis, the return premium would be $1183.29.

"That the return premium on policy No. LD-16269 on a short rate basis is $87.47 and that the return premium on said policy on a pro rate basis is $111.08.

"That the return premium on policy No. LD-16270 on a short rate basis is $87.47 and that the return premium on said policy on a pro rate basis is $111.08.

"That the return premium on policy No. LD-6936, after giving to the defendants credit for $41.85 and figuring the premium on the basis of $47.25 figured on a short rate basis would be $4.02, and figured on a pro rate basis would be $7.87.

"8. That the commission of the defendant, Preston Dobbin, on the policies numbered 42-006568, LD-16269 and LD-16270 on the correct premium basis would be $329.09.

"9. That the return commission due from the defendant, Preston Dobbin, to the plaintiff upon the cancellation of all of the policies, based upon a short rate cancellation would amount to $197.59, and that the commission due from the defendant, Preston Dobbin, figured on a pro rate basis would be $247.51.

"10. That the total premiums on the policies numbered LD-16269, LD-16270 and 42-006568 amounting to $1880.54 under the arrangement between plaintiff and defendant, Preston Dobbin, became due to the plaintiff on January 15, 1933.

"11. That on January 16, 1933, defendant, Preston Dobbin, placed in the mail, addressed to plaintiff at its office in Kansas City, Missouri, a check for the sum of $1754.23 signed by himself on his own account and drawn on the Pioneer Trust Company of Kansas City, Missouri. This check was based upon the amount $2126.34 originally charged as premiums on said policies numbered LD-16269, LD-16270 and 42-006568, less a commission based on that amount of $372.11.

"That such check was received at the office of the Maryland Casualty Company on January 17, 1933, but was misplaced and the receipt thereof was not known to the manager of the Maryland Casualty Company, Kansas City, Missouri, and was not discovered or found until after January 25, 1933.

"That on January 23, 1933, the office of the Maryland Casualty Company called the office·of defendant, Preston Dobbin, and requested payment of the premiums on the last mentioned three policies, and were informed by the office of defendant, Preston Dobbin, that a check in payment of the same had been sent to the plaintiff on January 16, 1933; that the office of the Maryland Casualty Company on said January 23, 1933, notified defendant, Preston Dobbin, that it had not received the check.

"And on the same day, January 23, 1933, defendant, Preston Dobbin, over the telephone, directed the Pioneer Trust Company, upon which such check was drawn, to stop payment on the check.

"That on the same day, January 23, 1933, the defendant, Preston Dobbin, wrote and placed in the mail addressed to the Pioneer Trust Company, the following letter:

"January 23, 1933.

"Pioneer Trust Company,
"1014 Baltimore Avenue,
"Kansas City, Missouri.
"Gentlmen:                      Preston Dobbin Agent Account
"This will confirm our telephone request to stop payment on our check No. 368 made payable to the Maryland Casualty Company in the amount of $1754.23, and dated January 16, 1933.
"Very truly,
"Preston Dobbin."

"That at the time of the writing of said check and up to the closing of the Pioneer Trust Company, defendant, Preston Dobbin, had on deposit in the Pioneer Trust Company in the account on which said check was drawn, an amount more than sufficient to pay such check.

"That the Pioneer Trust Company did not open for business on the morning of January 25, 1933.

"12. That on or about the 25th day of January, 1933, the Pioneer Trust Company was placed in the hands of the Finance Commissioner for the purpose of liquidation.

"13. That the records in the Pioneer Trust Company failed to show that any stop order was transmitted in writing to the Pioneer Trust Company and entered upon the records of said bank, in which payment was stopped of the check No. 368 payable to the Maryland Casualty Company in the amount of $1754.23, dated January 16, 1933.

"14. That the Maryland Casualty Company refused to allow policies numbered LD-6936, LD-16269, LD-16270 and 42-006568 to remain in force and that said policies of insurance were cancelled by the defendants herein."

From what appears on page 29 *et seq.* of the record following the introduction of the stipulation in question, it appears to have been agreed that, by paragraph 13 of the stipulation, it was not meant that the defendant had not written a letter or engaged in a telephone conversation with the bank or some officer thereof, directing that the payment of the check be stopped but was meant only that no direction was given to the teller to stop payment and that there was no entry made on the records of the bank showing that a stop order had been made. And, in connection with paragraph 14, it further appears that the plaintiff had notified the defendant Dobbin that it would cancel the policies if he did not cancel them and that the plaintiff notified the defendant Dobbin that it would not carry the policies any further if he did not pay for them—that is, by repayment other than that claimed by the check of January 16; that the defendant Dobbin thereupon arranged for other insurance to take the place of that which he had placed with the plaintiff and notified the plaintiff to cancel the original policies as of February 1, 1933; that defendant Dobbin advised the plaintiff that he could not pay up and that he should not be required to cancel the policies on the short rate basis; that the plaintiff advised him that it would cancel the policies *pro rata* if he would pay for them without undue delay; that the defendant never made such payment or repayment and the policies were canceled as of date February 1, 1933; that, when sent in by the defendant Dobbin, he requested that they be canceled on the *pro rata* basis. The matter of the cancellation of the policies and the demand for payment came up after the original check had been sent in by the defendant and was claimed not to have been received by the plaintiff and not to have been in its possession and arose by reason of the fact that the plaintiff claimed that there had been no payment by reason of any such check.

The defendant contends that the stop payment order given by him was given on the suggestion of the plaintiff. However, we have been unable to find in the record any admission to such effect. The record merely recites that, on the twenty-third, when the plaintiff advised the defendant Dobbin that it had never received and did not have such check, the defendant called some officer of the bank and talked to him, directing the non-payment of the check, and afterward confirmed such direction over the telephone by letter to the same effect, in which he identified the check by date and amount, and that this letter was received by the bank in due course of mail. It is nowhere shown that the plaintiff directed him to do so; and it is nowhere shown that, upon giving such directions, he notified the plaintiff that he had done so. The original check is not shown to have been returned to the defendant by the plaintiff, and no duplicate check was issued by the defendant to the plaintiff. The

defendant, however, left the amount of the check on deposit with the bank; and it was there when the bank closed on January 25. The record shows that, since such date, the defendant has received the sum of $526.96 from the closed bank as a dividend on his deposit representing the amount of the check. The record merely shows that Mr. Beardsley, counsel for the defendant, in his opening statement, said that, upon the same date upon which the plaintiff's office stated to the defendant Dobbin that the plaintiff had not received the check and did not have it, it was suggested to him by some one in the plaintiff's office that he stop payment on the check and give it another. The record does not show that this statement was admitted to be true by the plaintiff's counsel although it does not show any objection thereto by him; and it does not appear from the record that any evidence was ever introduced showing that such suggestion was made.

The answer and counterclaim alleges, in effect, that the defendant Dobbin had been doing business with the plaintiff since the year 1928 and had continued to do business with it until after the occurrence in question; that, during that time, it had been his custom to send the plaintiff his checks in payment of the accounts between him and it; and that the checks had been cashed in due course by the plaintiff and the accounts balanced. That such is true does not appear from the record. When the statement was made by Mr. Beardsley that such was the fact, the plaintiff's counsel, Mr. Harris, appears to have stated that no other check was sent except the one in question, to which statement of Mr. Harris, Mr. Beardsley appears to have assented.

Such pertinent facts as may appear from the letters introduced in evidence will be more fully set out as and if occasion may require.

At the beginning of the trial, the cause was dismissed as to the Logan Jones Dry Goods Company and thereafter proceeded against Dobbin as the sole defendant. It was tried as an equity case, as will be shown by the following colloquy between the court and the counsel at the beginning of the case, as shown by the record at page 16:

"Mr. Harris: Here is the case, if the court please, we are suing for $603.14. We may have to amend as to a few dollars one way or the other.

"The Court: Jury waived?

"Mr. Harris: Yes, sir.

"Mr. Beardsley: No, sir. I have filed an answer in which I ask for equitable relief, but just let the record show that the jury is waived.

"Mr. Harris: I believe we had better consider it as an equity case.

"Mr. Beardsley: Yes, sir."

It appears from the record that the defendant Dobbin had an arrangement with the plaintiff by which a credit of sixty days was given him for the payment of all premiums collected by him on policies placed by him and that his credit on this item expired on January 15, 1933.

It appears from Exhibit A, a letter from the plaintiff's counsel to the defendant of date March 24, 1933, introduced in evidence by the defendant, that the check in question was found in the desk of Mr. Paul Miller, an employee in the plaintiff's office, among other papers and blotters, where it evidently had been placed by him, Mr. Miller in the meantime having left the employ of the plaintiff. Just at what time it was discovered is not definitely shown by the record. The check was never returned to the defendant although offered to him. He did not accept it.

From Exhibit 4, a letter written by the defendant to Mr. J. Frank Miller, connected officially with the plaintiff's office, introduced in evidence by the plaintiff, it appears that the blotter enclosed in the same envelope with the check was found on the desk of a young lady in the plaintiff's office whose duty it was to open the mail.

From Exhibit 7, a letter from the defendant Dobbin to Mr. J. Frank Miller of the plaintiff company, introduced in evidence by the plaintiff, it appears that no effort had been made by the plaintiff to locate the blotter and check until after January 30, so that it is fair to assume that neither the blotter nor the check was found until after the bank closed on January 25.

At the close of the evidence and also of the argument, the plaintiff, through its counsel, requested certain findings of fact numbered 1 to 10 inclusive, shown in the record, and, in connection therewith, certain conclusions of law numbered 1 to 8 inclusive, shown in the record, all of which were refused by the court. Thereupon, the defendant asked of the court and the court granted conclusions of law lettered A, B, C, D, E, F, and G, shown in the record.

The cause being submitted, the trial court found the issues for the defendant, both upon the plaintiff's petition and upon the defendant's answer and counterclaim, and found against the plaintiff on both. It charged the plaintiff with the amount of loss sustained upon the check by reason of its failure to present the same to the bank for payment, less the dividend received on the amount thereof by the defendant from the bank and found that the defendant was entitled, upon the cancellation of the policies, to credit for return premiums upon the *pro rata* basis. Upon stating the account between the plaintiff and the defendant, it found a balance due from the plaintiff

to the defendant in the sum of $1050.10, for which, together with interest thereon added at the rate of six per cent. per annum from January 24, 1933, in the sum of $203.14, in the total sum of $1,253.24, it rendered judgment for the defendant.

From such judgment, the plaintiff, after unsuccessful motions for a new trial and in arrest of judgment, prosecutes this appeal.

## OPINION.

1. Upon this appeal, the plaintiff assigns error upon the action of the trial court in the giving and the refusal of requested findings of fact and conclusions of law. The cause is one in equity and was tried by the court, upon the agreement of the parties, as an equity case. They are bound by such agreement. [Roselle v. Beckemeir, 134 Mo. 380, 35 S. W. 1132.]

It is one therefore to be considered by us *de novo* and determined by us upon a review of the whole record. It is not only our privilege but our duty to examine the evidence for ourselves and draw our own conclusions of fact as well as of law. [Blount v. Spratt, 113 Mo. 48, 20 S. W. 967; Miller v. McCaleb, 208 Mo. 562, 106 S. W. 655; Shaffer v. Detie, 191 Mo. 377, 98 S. W. 131; Harvey v. Long, 260 Mo. 374, 168 S. W. 708; Fitzpatrick v. Weber, 168 Mo. 562, 68 S. W. 913; Patterson v. Patterson, 200 Mo. 335, 98 S. W. 613.]

Error cannot therefore be assigned on the action of the trial court in the giving or the refusal of findings of fact. Neither can it be assigned upon the giving or the refusal of conclusions of law, for the reason that there is no place in an equity suit for instructions. [Lee v. Lee, 258 Mo. 599, 167 S. W. 1030.]

The unbending rule of practice is that instructions fill no office at all in an equity case; hence, error cannot be predicated or assigned upon the giving or refusing of them.

In chancery, there is no difference in the rule to be applied to an instruction and to a conclusion of law.

Moreover, where the facts are stipulated, conceded, or agreed, in any case whether in equity or at law, there is no occasion or rule for a finding of fact. [Kristanik v. Chevrolet Motor Company (Mo.), 70 S. W. (2d) 890; Friedman v. State Mutual Life Assur. Co. of Worcester, Mass. (Mo. App.), not yet published.] Furthermore, in this case, the court made a finding upon all of the necessary facts to be found in rendering judgment.

The only assignment made by the plaintiff, other than those relating to the giving and the refusal of findings of fact and conclusions of law, is that the judgment of the trial court was wrong in finding against the plaintiff on its petition and in favor of the defendant on his answer and counterclaim. If this is to be considered as a sufficient assignment to challenge the judgment of the court below, we

must, nevertheless, determine the question as to whether it rendered equity by its judgment from our own review of the record and of the facts in evidence and upon our own judgment as to the law applicable.

2. Upon final analysis, the principal question in this case relates to the liability for the loss sustained by reason of the failure of the plaintiff to present the check for $1,754.23 (forwarded by the defendant to it in payment of the account sued on) to the Pioneer Trust Company, the bank on which it was drawn, for payment prior to the failure of such bank and to whether the loss on account of such failure should fall upon the plaintiff or upon the defendant. It is held by the trial court that it should fall upon the plaintiff.

3. The plaintiff contends that, by reason of certain matters appearing in the record more particularly hereinafter referred to, it was excused from such presentment and that the loss occasioned thereby, if any, should be borne by the defendant. It contends in the first place that such check was not received and accepted by it in full payment of the account sued on; that there was no agreement on its part that the same should be accepted as absolute payment of such account; and that, without an express agreement to such effect, the mere receipt and acceptance of the check would not constitute absolute payment of the obligation for which it was given, in the absence of an express agreement that it was so accepted. This seems uniformly held. There is no need for the citation of authorities. Such agreement, though required to be express, may nevertheless be shown from the circumstances. [Farm & Home Building & Loan Ass'n v. Stubbs (Mo. App.), 98 S. W. (2d) 320.]

It contends that, under the circumstances in the record, the check was received and accepted by it upon the condition that it should be paid. Such may be conceded as true. But, the check having been retained upon such condition, it became the duty of the plaintiff to use reasonable diligence to present such check to the bank and exact payment. It had a reasonable time, under all of the circumstances, to make such presentment; and, in having failed to do so, it must sustain the loss occasioned by such failure.

It is provided by Section 2814, Revised Statutes of 1929, as follows:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

In determining what is a reasonable or an unreasonable time, in which to present a negotiable instrument, regard is to be had to the nature of the instrument and the usage of trade and business, if any, with respect to such instrument and the facts of the particular case. [Section 2824, R. S. 1929.]

The rule seems to be well established in Missouri that, where a check is delivered by the drawer to the payee in the same place where the bank on which it is drawn is located, a reasonable time for its presentment, where no cause for delay appears, is within the banking hours on the day of its delivery or within the banking hours on the next day after its delivery. [Rosenblatt v. Haberman, 8 Mo. App. 486; Dyas v. Hanson, 14 Mo. App. 363; Farmers' National Bank v. Dreyfus, 82 Mo. App. 399; Wear v. Lee, 87 Mo. App. 358; Maxwell v. Dunham (Mo. App.), 297 S. W. 94; Koch v. Sanford Loan & Realty Co., 220 Mo. App. 396, 286 S. W. 732; Missouri Pacific Ry. Co. v. H. M. Brown Coal Co., 226 Mo. App. 1038, 48 S. W. (2d) 86; Farm & Home Building & Loan Ass'n v. Stubbs, supra.]

4. The plaintiff seeks to excuse its delay in the presentment of the check in question upon the grounds (1) because it had no knowledge of the receipt of the check or knowledge that the same was in its possession until after the bank on which it was drawn had failed; (2) because the payment of the check had been ordered stopped by the defendant prior to the closing of the bank; and (3) because the defendant had negligently enclosed the check in the same envelope with certain of his advertising blotters.

5. As to the first ground advanced—The plaintiff has agreed that the check was received by it on January 17, 1933, and, since such date, it had continuously been in its possession, covering the date of the bank's failure. It contends, however, that the same had been misplaced and the receipt thereof was unknown by its manager until after the date on which the bank closed. The record recites an agreement that such is true. The plaintiff argues that, inasmuch as the receipt of the check was unknown to the plaintiff's manager until after the closing of the bank and it had been misplaced, its failure to present the same was excused. However, it fairly appears from the record that the plaintiff's manager was one J. Frank Miller, with whom the defendant's correspondence was had and referred to in the briefs. The check, when found was found in the desk of one Paul Miller, an employee in the office referred to in the briefs as its cashier; and an advertising blotter of the defendant which was enclosed in the same letter with it was found on the desk of a lady employee of the plaintiff, whose business it was to open the mail. Whatever personal information the plaintiff's manager may have had or may not have had, it is evident that the plaintiff had knowledge of the receipt of the check through its employees and agents. The defendant, in making the post office his agent for the delivery of the check, took the chance of its delivery; but, after delivery was accomplished, he is not to be penalized by reason of the carelessness of the plaintiff in opening and handling its mail and taking care of and presenting the check. Upon the delivery of the check in question to

the plaintiff through its employees at its office, it became the duty of the plaintiff at once to reject and return the check to the defendant or to use due diligence in the handling and presentment of it for payment and collection; and, if the bank failed in the meantime, in the absence of such diligence, upon the plaintiff's part, it became liable in damages to the defendant for all loss sustained by reason of such failure. If it carelessly failed to open and examine its mail or carelessly misplaced the check so that it was overlooked, it must assume the burden of the loss occasioned thereby. The defendant was not responsible for its carelessness and cannot be penalized on account thereof. The defendant is the innocent party in the matter:

The contention is resolved against the plaintiff.

6. As to the second ground advanced, that the defendant stopped the payment of the check prior to the closing of the bank and that therefore the plaintiff was excused from its presentment, it may be said that it is a matter clearly appearing from the record that the defendant stopped such payment solely by reason of a misstatement made to him by the plaintiff, that it had not received and did not have the check. This statement was made about one week after the check had been mailed and the plaintiff had received it. At the time that such representation was made, the plaintiff or some one of its employees and agents had, in fact, received the check and at such time had it in possession. Such statement was made with reference to a material matter and with the intention that the defendant should rely on it. The mere fact that the plaintiff's manager, if so, may not have personally known of its receipt or that it was in the possession of some one in the office does not excuse such statement. Before making such statement, the plaintiff should have known that it had not been received in the office by any one and that it was not in the possession of any one in the office or any one connected therewith. In the absence of complete knowledge, such statement was reckless and inexcusable and, in law, implied a fraudulent intent. [Smithpeter v. Mid-State Motor Co. (Mo. App.), 74 S. W. (2d) 47; Luikart v. Miller (Mo.), 48 S. W. (2d) 867; Western Cattle Brokerage Co. v. Gates, 89 S. W. 382, 190 Mo. 391; Hamlin v. Abell, 120 Mo. 188, 25 S. W. 516; Stratton v. Dudding, 164 Mo. App. 22, 147 S. W. 516.]

The plaintiff should not in equity be permitted to take advantage of its own wrong to the injury or disadvantage of the defendant. It should not be permitted to profit by its own wrongful act. There is nothing in the record to show that the defendant gave the order to stop the payment of the check except that (from the plaintiff's statement) he believed that the check had gone astray and had fallen into other hands. The plaintiff suffered no injury so far as the record shows from such stop payment order. It was not even advised of the fact that such stop payment order was made. The defendant did

not withdraw his funds from the bank. Such stop payment order does not even appear to have been entered upon the records of the bank at the place where usually made so that the bank, in all events, would have refused payment of the check had it been presented. All that the record shows is that the defendant called some one in the bank over the telephone and gave the order and later confirmed such telephone order by letter. The plaintiff never made any effort to present the check. Nothing that the defendant did prevented it from at least presenting it. If it had done so and payment had been refused, we might have another question. The record does not show that the·plaintiff was in any way injured by the action of the defendant with respect to the stop payment order or interfered with by the defendant in making presentment of such check.

The contention is ruled against the plaintiff.

7. As to the third ground advanced by the plaintiff—There is nothing in the record showing that more than one blotter was enclosed by the defendant in the envelope with the check; and that only one blotter was enclosed appears from a letter written by the defendant concerning the matter after the bank had closed. It was evidently not a very large blotter. · There is no reason apparent why the blotter should have been discovered and the check not. That it was discovered is shown by the fact that both the blotter and the check were taken out of the envelope, the blotter kept by the lady who opened it ·and the check delivered to Paul Miller, an employee in whose desk it was afterward found. We see nothing in such matter to excuse the plaintiff's delay.

8. The plaintiff contends that, by reason of the defendant's having placed the order of stop payment with the bank, therefore its failure to have presented the check was not the proximate cause of the loss of the defendant's money in the bank with which to pay the check but that the proximate cause of such loss or damage was the failure of the bank itself. The circumstances under which the stop payment order was made have hereinbefore been set out and referred to. That such order was made solely as the result of the plaintiff's misstatement to the defendant with respect to its not having received such·check and its not having it in its possession is fairly to be assumed from the record. The defendant did not withdraw his funds in the bank for the payment of the check but left them there. He did not advise the plaintiff that he had made the stop payment order. There is nothing in the record to show that the plaintiff failed to present the check for payment by reason of such stop payment order or, if it had presented it for.payment, that it would not have been paid. It is not shown that the plaintiff was in any way prejudiced by such stop payment order or in any manner interfered with or prevented from making presentment of the check for payment. More-

over, such stop payment order was induced by its misrepresentation; and it should not be permitted to profit thereby at the expense of the defendant. If the plaintiff had presented the check, the defendant would have been bound to have seen that it was taken care of. The plaintiff merely made no effort to present it.

9. It argues that the defendant himself, after being advised by it that it did not have the check, could have withdrawn the money from the bank and saved himself from any loss thereof. The defendant could not in good faith, however, have done so. He was under duty to leave the money for the payment of the check when found or for the payment of a duplicate when issued in place thereof. The mere stopping payment of the original check did not absolve him from the obligation thereon. The money was left in the bank for that purpose, either with or without a duplicate check being issued. It must be held, under the circumstances in the record, that the plaintiff's failure to present the check before the failure of the bank (it having had the same in its possession for more than a reasonable time within which to have made such presentment) was the proximate cause of the defendant's loss and not the mere failure of the bank.

10. A further question arises with reference to the credits to which the defendant is entitled upon his answer and counterclaim, respecting the amount of the return premiums to which he was entitled upon the cancellation of the insurance policies. Upon the cancellation of such policies, the plaintiff calculated the return premiums to which the defendant was entitled upon what is termed a "short rate" basis, as distinguished from a *"pro rata"* basis. It appears to have been agreed between the parties upon the trial that the general practice, in the absence of any agreement, is to cancel the policies sent in by the insured on what is called the short rate basis and, where canceled by the company of its own volition, upon a *pro rata* basis; that by *"pro rata"* is meant a proportionate rate for the actual time and by "short rate" is meant one that adds a penalty in addition to the *pro rata* charge; and that therefore, when cancelled upon a short rate basis, a less premium is returned. The plaintiff contends that, the defendant having sent such policies in voluntarily for cancellation, he is entitled to return premiums on the short rate basis only. The defendant contends to the contrary—that he did not send such policies in for cancellation voluntarily but that he was coerced into doing so by the plaintiff; that, after the controversy about the check arose, the plaintiff insisted that the defendant pay the premiums on said policies, other than by the check which had been sent in and claimed by it not to have been received; that the plaintiff refused to carry said policies further unless such payment was at once made, in which event it offered to cancel them on a *pro*

*rata* basis; that the defendant was unable to make such payment and refused to do so; that the plaintiff thereupon stated to the defendant in effect that, unless such payment was made, it would cancel the policies; that the defendant thereupon replaced the insurance and sent the policies in for cancellation, solely by reason of the controversy that had grown up between the plaintiff and the defendant with respect to the check, based upon the plaintiff's representation that it had not received it and did not have it in its possession; that, when he surrendered the policies for cancellation, he surrendered them and requested their cancellation on the *pro rata* basis; and that the plaintiff, ignoring his request, canceled them on the short rate basis. Under all of the circumstances, we are convinced that the defendant was entitled to a cancellation upon a *pro rata* basis. The defendant was not responsible for the circumstances climaxing in the cancellation of the policies. The cancellation was induced by the misrepresentation made by the plaintiff to him with respect to its not having received the original check. At the time the plaintiff made such representation, it had the original check.

The trial court found against the plaintiff on its petition and in favor of the defendant thereon. It found in favor of the defendant and against the plaintiff on the defendant's answer and counterclaim. It found that the defendant was entitled to the cancellation of the policies on the *pro rata* basis and that the defendant was entitled to a return premium on that basis and, after allowing credit for a dividend of thirty per cent, received by the defendant on the amount of his deposit in the bank equaling the amount of the check and for other items of credit to which it was agreed that the defendant was entitled, found in favor of the defendant in the net sum of $1050.10, on which sum it allowed interest at the rate of six per cent. per annum from March 24, 1933, in the sum of $203.14, making an aggregate sum due the defendant from the plaintiff of $1,253.24, for which sum it rendered judgment for the defendant.

We are convinced that the trial court in adjusting the accounts between the plaintiff and the defendant proceeded on the correct theory and that the amount of the judgment so rendered is in accordance with the facts stipulated in the record, on which it is based. We reach this conclusion not only from an examination of the trial court's findings and judgment but from our own independent review of the facts in the record.

The judgment of the trial court is affirmed. All concur.